**Leo PORTMAN, Appellant,**

v.

**Earnest L. EARNHART et al., Appellees.**

No. 15753.

Court of Civil Appeals of Texas.

Dallas.

Dec. 30, 1960.

Rehearing Denied Feb. 17, 1961.

Johnson, Guthrie & Stanfield, Dallas, and John Atchison, Gainsville, for appellant.

Howell, Freels, Elliott & Nall and Joe A. Keith, Sherman, for appellees.

THOMAS, Justice.

This case involves the title to one-fourth of the minerals in and under a 65.25 acre tract of land in the F. M. Puryear Survey in Grayson County, Texas, which appellant Portman claims by virtue of a mineral deed from T. A. Key. Key's claim of title to said minerals rested on a mineral deed from S. F. Earl, a former fee owner, which deed was unrecorded in Grayson County for almost seventeen (17) years. It is our opinion that the judgment awarding title to the minerals in controversy to the appellees who had acquired the tract as innocent purchasers for value during the seventeen years the mineral deed from Earl to Key was not of record in Grayson County, and to their grantees who have intervened herein, should be affirmed.

Appellees, Earnest L. Earnhart and wife, and O. D. Meek and wife, as plaintiffs, brought suit against appellant Leo Portman who resides in the State of Oklahoma, in trespass to try title to an undivided interest in and to the oil, gas and other minerals under the 65.25 acre tract described by metes and bounds in the petition. As a second cause of action, appellees plead their chain of title and alleged that the mineral deed purporting to convey to appellant, Portman, an undivided one-fourth interest in the oil, gas and other minerals in and to said land, as well as the deed from the former owner of the tract, S. F. Earl, conveying such an undivided interest to T. A. Key, appellant's grantor, both constituted clouds on the title of the appellees and should be cancelled and removed.

Appellant Portman answered with a plea of not guilty and specially disclaimed all rights, title and interest in the surface estate of said 65.25 acres of land, but alleged that he has been the owner of an undivided one-fourth interest in all of the minerals ever since they were conveyed to him by T. A. Key by deed dated July 20, 1937.

Harvey M. Gandy, Ralph Elliott and Rayburn Nall intervened alleging that they have an interest in the minerals by virtue

of certain mineral deeds from appellees. They adopted the allegations and the prayers of appellees.

A jury having been waived, the case was tried to the court. Judgment was rendered that the appellees and the intervenors recovered the title to the undivided interest in and to the oil, gas and other minerals involved in the proportions sued for. It was further ordered, adjudged and decreed that the mineral deed to appellant's grantor, T. A. Key, as well as the mineral deed from T. A. Key to appellant, under which he claims, be cancelled and removed as clouds upon the title of appellees and intervenors.

No findings of fact were filed, and none were requested. Therefore, the judgment implies that the trial judge found, from a preponderance of the evidence, the facts necessary to support the judgment. The judgment will not be disturbed on appeal provided there was evidence to support such findings. O'Ferral v. Coolidge, 149 Tex. 61, 228 S.W.2d 146.

Appellees' chain of title from the agreed common source, J. W. Carey and wife, is as follows:

(1) General warranty deed from the Careys dated October 5, 1934, recorded October 8, 1934, conveying the 65.25 acres of land involved to S. F. Earl.

(2) Three (3) mineral deeds from S. F. Earl and wife, all recorded on December 7, 1937, as follows: (a) to J. N. Martin, dated July 20, 1937 conveying ⅛th of the minerals in and under the 65.25 acre tract; (b) to F. C. Blagg, dated July 20, 1937, conveying an undivided ⅛th of the minerals in and under said tract; (c) to F. C. Blagg, dated July 21, 1937, conveying ³⁄₁₆ths of the minerals in and under said tract. The mineral interests conveyed by the three deeds just listed are not involved herein in any respect.

(3) General warranty deed from S. F. Earl and wife, dated September 11, 1944, recorded September 12, 1944, conveying the 65.25 acres to W. A. Mills. There is no reservation or exception of minerals in this deed.

(4) General warranty deed dated April 30, 1948, recorded May 24, 1948, from W. A. Mills and wife, conveying the tract to appellee O. D. Meek. Again there is no reservation or exception of any minerals.

(5) A correction deed from J. W. Carey and wife, dated December 6, 1950, conveying the 65.25 acre tract to O. D. Meek. This deed was given to supply a missing call in the description of the tract used in the above mentioned warranty deeds. The defect in the description was not fatal and no point is here made in regard thereto.

(6) Mineral deed dated May 20, 1951, from O. D. Meek and wife, conveying to S. W. Sims 20/65.25ths interests in all of the minerals in and under the 65.25 acre tract. The mineral interest conveyed by the latter deed also is not involved here in any respect.

(7) General warranty deed dated September 5, 1952, from O. D. Meek and wife, conveying the 65.25 acre tract to appellee Earnest L. Earnhart. At the end of the metes and bounds description of the land as described in the granting clause the following words appear: "containing 65.25 acres of land, less the minerals heretofore severed, and sold off."

The chain of title of appellant, Portman, emanates from said S. F. Earl as follows:

(A) Mineral deed dated July 17, 1937, from S. F. Earl conveying to T. A. Key 16.-31/65.25ths (being ¼th) interest in and to all the oil, gas and other minerals in and under a tract of land situated in Grayson County, Texas, and being the 65.25 acres involved herein. This deed was filed for record on July 22, 1937, in *Cooke County, Texas*. A certified copy of that deed was filed for record on the 6th day of February, 1954, in the office of the County Clerk of

Grayson County, Texas. It is the failure to record this mineral deed in Grayson County for almost seventeen (17) years that caused this suit.

(B) Mineral deed dated July 20, 1937, executed by T. A. Key, conveying to Leo Portman an undivided 16.31/65.25ths (being ¼th) interest in and to all the oil, gas and other minerals in and under and that may be produced from the 65.25 acre tract involved herein. This mineral deed was recorded in Grayson County on July 22, 1937. It gave the residence of T. A. Key as Cooke County, Texas, but made no reference as to the residence of the grantee, Leo Portman. The acknowledgment of the grantor Key was taken by F. C. Blagg, a Notary Public in and for Cooke County, Texas. No reference is made in this deed as to the source of the title which T. A. Key had acquired in the minerals in the 65.25 acre tract being conveyed by him to appellant.

Appellant's single point of appeal is as follows:

"1. The undisputed evidence establishes as a matter of law that Earnhart took the conveyance of the 65.25 acres in question from Meek with knowledge of and subject to a mineral interest of 16.31/65.25 outstanding in Leo Portman."

The controlling questions in this case are:

(1) Did appellee Meek, when he acquired title to the 65.25 acre tract from Mills have notice through Instrument B above that ¼ of the minerals in the tract had been conveyed to T. A. Key by unrecorded Instrument A?

(2) Did the appellant Earnhart acquire the land with notice of the unrecorded mineral deed?

It is not disputed that both appellees Meek and Earnhart had paid fair value for the tract. W. A. Mills, Meek's grantor, was deceased at the time of the trial, and there is no showing as to whether he was an innocent purchaser from Earl.

■ Notice in law is of two kinds—actual and constructive. "The law is thoroughly settled in this state that, while a purchaser is bound with constructive notice of all recorded instruments lying within his chain of title, the record of a deed or instrument lying outside of his chain of title imports no notice to him." Brown v. Ackerman, Tex.Com.App., 17 S.W.2d 771 (Syl. 1). Therefore, it is conceded that the record of Instrument B, the mineral deed from Key to appellant, imported no constructive notice to any party hereto, because of its lying entirely outside of appellees' chain of title.

■ "In common parlance 'actual notice' generally consists in express information of a fact, but in law the term is more comprehensive. In law whatever fairly puts a person on inquiry is sufficient notice, where the means of knowledge are at hand, which if pursued by the proper inquiry the full truth might have been ascertained. Means of knowledge with the duty of using them are in equity equivalent to knowledge itself. Where there is a duty of finding out and knowing, negligent ignorance has the same effect in law as actual knowledge. So that, in legal parlance, actual knowledge embraces those things of which the one sought to be charged has express information, and likewise those things which a reasonably diligent inquiry and exercise of the means of information at hand would have disclosed. Actual notice is always a question of fact." Hexter v. Pratt, Tex.Com. App., 10 S.W.2d 692, 693 (Syl. 2).

■ " 'Actual notice' literally means express or positive personal information or knowledge directly communicated to the person to be affected. In a more comprehensive sense, the term also embraces knowledge of all those facts which reasonable inquiry would have disclosed, the duty of inquiry extending only to matters that are fairly suggested by the facts really known." Flack v. First National Bank of Dalhart, 148 Tex. 495, 226 S.W.2d 628, 631. Quoting from 31 Tex.Jur. p. 359–360.

"Ordinarily, notice is a question of fact which is foreclosed by the judgment of the trier of the facts; it becomes a question of law only when there is no room for ordinary minds to differ as to the proper conclusion to be drawn from the evidence." O'Ferral v. Coolidge, supra. [149 Tex. 61, 228 S.W.2d 148]

In view of appellant's contention in his only point of appeal that the undisputed evidence establishes as a matter of law facts which would entitle him to a judgment for the minerals claimed under the deed from Key to Portman, we must examine the record to determine if there was any evidence of probative value to support the implied fact findings of the trial judge. "In determining this question we must view the evidence in the light most favorable to plaintiffs (appellees), rejecting all evidence favorable to defendants." Woodward v. Ortiz, 150 Tex. 75, 237 S.W.2d 286, 289 (Syls. 4 & 5).

Appellee Meek testified that he bought the 65.25 acre tract from W. A. Mills, deceased, at its fair value of $2470; that he employed Mr. R. S. Watson, Attorney-at-Law, to examine the title to the land; that his attorney told him the "title was all right", and he relied upon his attorney entirely; that he knew some minerals had been sold to Mr. Blagg, but understood he was getting good title to the 18 plus acres of minerals involved in this suit out of which appellant is claiming slightly over 16 acres of minerals; that he did not know Mr. Key or Mr. Portman, never was told by either about any claim to any minerals; that he did not understand at the time he purchased this land that the deed from Key to Portman involved in this suit was on record; that he had never handled any land purchases before and left everything up to Mr. Watson.

Appellee Earnhart testified that he bought the tract from Mr. Meek paying a fair value of $4,000; that he employed Attorney Watson to examine the title for him; that Mr. Watson did not discuss with him the fact that there was a deed from Mr. Key to Mr. Portman on record; that he understood he was acquiring 18.91 mineral acres when he purchased the land; that he never knew Mr. Key and only met Mr. Portman at the trial; that he never knew that either Mr. Key or Mr. Portman was asserting any kind of claim to any of the minerals in the tract when he purchased and the same is true of his wife; that he learned about the Portman claim when he sold Intervenor Gandy 8.91 royalty acres in 1954; that he relied on Mr. Watson entirely.

R. S. Watson, Esq., attorney for each appellee when each purchased the 65.25 acre tract, testified that it was his opinion, and he so told appellee Meek, that he was acquiring the minerals in controversy; that he did come across the isolated deed from Key to Portman in the examination of the abstract, but did not find any kind of connection between Key and any of Meek's predecessors. Mr. Watson also testified that when he examined the title for appellee Earnhart he advised him also that he was acquiring title to the surface and the 18 plus acres of minerals; that in his opinion Mr. Key was an interloper or stranger to the title, and the deed from Key to Portman was of no effect; that he did not have any actual knowledge that any other fact existed; that Mr. Key died in Gainesville prior to 1948, he believed; that he did not know Mr. Portman or his whereabouts on the occasions when he passed title first for Meek in 1948 and then for Earnhart in 1952 though he had made inquiry as is shown by his testimony as follows: "I found out from Mr. Edwards, I believe, where he lived. I didn't know, I couldn't find, didn't seem to find anybody that knew him or knew where he lived. Somebody told me that he lived up in Oklahoma and that's about—I believe Mr. Edwards of Gainesville later gave me the address where I could locate him." So far as the record shows Mr. Watson did not learn of Portman's whereabouts until a short time before this suit was filed in 1954 when he came by the information from a

Mr. Edwards of Gainesville, Cooke County, Texas.

 The information Attorney Watson obtained from examining the abstract of title to the land for appellees Meek and Earnhart is imputed to them, Hexter v. Pratt, supra. Therefore, each knew of the existence of the recorded Key-Portman mineral deed. Of course, if either Meek or Earnhart had carelessly or imprudently purchased the 65.25 acre tract without requiring an abstract and without having engaged an attorney to examine the title, each would have been an innocent purchaser since the mere record of the Key-Portman deed would not have given constructive notice of its existence. Appellees should not be penalized for their prudence in being careful about their title while appellant is being rewarded for his imprudence in carelessly leaving an essential link in his chain of title unrecorded for almost seventeen (17) years, unless the law applicable to the facts here clearly requires such a result. The spirit of the registration laws is antagonistic to title by inquiry, reputation, hearsay or other character unless the ends of justice and common honesty requires recognition of a title outside the records which the State has provided for prudent purchasers. Strong v. Strong, Tex.Com.App., 128 Tex. 470, 98 S.W.2d 346–348, 109 A.L.R. 739.

 Even though appellees did have imputed information that the Key-Portman deed was on record, they are not thereby put on actual notice of the unrecorded deed from Earl to Key. At most, they were charged with the duty of making a reasonably diligent inquiry using the means of knowledge at hand to ascertain the truth. It is a question of fact whether their attorney who acted for each appellee made such an inquiry. The trial court necessarily found that he did. There is sufficient evidence to sustain the finding.

What were the means of knowledge at hand with which the inquiry must start?

To begin with, neither appellee nor Attorney Watson had knowledge of any existing fact bearing in any manner on the title of appellant except that contained in the record of the Key-Portman deed. Then it was determined that the grantor, T. A. Key, was dead. That means of knowledge, therefore, no longer existed. Next, the residence of the grantee, appellant Portman, was not given in his deed. Even in the body of his deed appellant neglected to furnish a means of knowledge of his whereabouts for the use of anyone seeking to make inquiry of him as to the nature and extent of his title, if any. Attorney Watson, in attempting to find appellant so inquiry could be made, "couldn't find, didn't seem to find anybody that knew him or knew where he lived." Finally, the recorded Key-Portman deed makes no reference to the source of Key's title as is customarily done in meticulous conveyancing. If the Key-Portman deed had concluded the description of the mineral interest conveyed with such words as "and being the same minerals conveyed to T. A. Key by S. F. Earl of mineral deed dated July 17, 1937, which is recorded in the Deed Records of Cooke County, Texas," then a means of knowledge would have been at hand which the attorney could follow in making an inquiry. It is critically significant that the mineral deed appellant filed for record to give notice of his ownership—that is the main purpose of the registration laws—contained within its four corners no clue to anyone charged with the duty of making inquiry as to the route to be pursued in ascertaining whether appellant had any title in truth.

Appellant vigorously contends that appellees and their attorney did not use sufficient zeal and diligence in making inquiry about any Portman title. Appellant suggests that by more brilliant detective work appellees might have perchance learned of the Earl-Key deed on record in the neighboring County of Cooke by interviewing either their remote grantor Earl, or the Notary Public who took Mr. Key's acknowl-

edgment to the deed to appellant. However, it is to be remembered that Mr. Earl in 1944 had conveyed to W. A. Mills by general warranty deed without exception or reservation the 65.25 acre tract including the very minerals involved in this suit, thereby covenanting that he had not previously conveyed the property or any right, title or interest therein to anyone other than the grantee. Art. 1297, Vernon's Ann. Civ.St.

Reasonable diligence in making inquiry regarding a deed entirely outside the chain of title does not necessarily include interrogation of every remote grantor back to the original patentee, and certainly no reasonable person should be required to interview Notaries Public about the source of title of those who might appear before them. The trier of the facts doubtless considered what was not done by appellees, as well as what was done by them and their attorney, but what they did not do in this regard does not charge them with actual notice of the Earl to Key deed and the Portman title as a matter of law when they purchased. Appellant is not in a favorable position to complain about the lack of zeal and diligence on the part of appellees and their attorney, having slept so long on his own rights. In balancing the equities, the trial court had sufficient facts upon which to base the judgment.

 The final argument of appellant to the effect that appellee Earnhart cannot be an innocent purchaser for value as to the minerals claimed by appellant because the deed from his grantor, appellee Meek, contains an exception in the granting clause of all "minerals heretofore severed and sold off," is not sound. Whatever might be the effect of the exception in a controversy between Meek and Earnhart on the warranty or otherwise, the rights of appellant are not enlarged or diminished by the provisions of the Meek-Earnhart deed. Appellant is not privy to that deed either in blood or estate. He is not bound by its recitals and cannot take advantage

of any equities that might have arisen between the parties hereto. Fowler v. Texas Exploration Company, Tex.Civ.App., 290 S.W. 818–823 (err. ref.). Furthermore, the judgment here is in favor of Meek as well as Earnhart cancelling the Earl-Key deed and the Key-Portman deed and removing them as a cloud on the title to the minerals involved. Necessarily the court found that appellee Meek was an innocent purchaser for value and that status applies to those holding under him. 43–B Tex.Jur., p. 84, § 775.

For the reasons stated, appellant's point of appeal is overruled and the judgment of the trial court is affirmed.