**HUE NGUYEN & Southwestern National Bank, Appellants,**

v.

**Alonso CHAPA, Appellee.**

**No. 14–08–00634–CV.**

Court of Appeals of Texas, Houston (14th Dist.).

Dec. 22, 2009.

---

Kurt T. Nelson, Houston, for appellants.

Lan Quoc Ngo, Lance Nguyen, Tom F. Coleman, Houston, for appellee.

Panel consists of Chief Justice HEDGES and Justices SEYMORE and SULLIVAN.

## OPINION

ADELE HEDGES, Chief Justice.

This dispute involves competing claims to 3.101 acres of land along Highway 249 in Harris County. In 2005, Victor Ruiz, owner of the 3.101 acres by virtue of a special warranty deed, sold the property to appellee, Alonso Chapa. Chapa did not file the contract for sale or a deed with the county reflecting his interest in the property. Thirteen months later, Ruiz sold the same 3.101 acres to appellant, Hue Nguyen. Nguyen immediately filed a general warranty deed with the county reflecting his interest in the property. After learning of the Ruiz–Nguyen sale, Chapa sought to establish his title by filing the underlying suit. Challenging Chapa's unrecorded interest, Nguyen claimed he was a bona fide purchaser. Appellant, Southwestern National Bank ("Southwestern"), the bank who financed Nguyen's loan on the 3.101 acres, intervened and asserted status as a bona fide mortgagee. A jury found in favor of Chapa on his contract claims against Ruiz and found against Nguyen's and Southwestern's claims of bona fide purchaser and mortgagee, respectively. Adopting the jury's verdict,

the trial court rendered judgment in favor of Chapa, declaring Chapa had superior title to the 3.101 acres. Nguyen and Southwestern now appeal, challenging the denial of their motions for new trial and judgment notwithstanding the verdict. In four related issues, Nguyen and Southwestern argue that because they did not have notice of Chapa's unrecorded interest, Nguyen is a bona fide purchaser, Southwestern is a bona fide mortgagee, and Chapa's unrecorded interest is void.

Finding as a matter of law that Nguyen is a bona fide purchaser and Southwestern is a bona fide mortgagee, we affirm in part and reverse and remand in part.

## I. BACKGROUND

The property in dispute consists of five lots that are a part of a larger tract of land known as Block four. The following illustration depicts the general nature of the lots from which the instant dispute arises.[1]

The record reflects that Doris Mae Ross originally owned Lots 6 through 15, and in 1990, she began selling the lots to various buyers.

### A. Ross–Chapa Deed

In 1990, Ross conveyed Lots 6, 7, 14, and 15 to Chapa by general warranty deed ("Ross–Chapa deed"). The land conveyed in the Ross–Chapa deed was described as follows:

Tract 1: [R]eal estate situated in Harris County, Texas and more particularly described as being 1.1774 acre tract, the residue of lots Six (6) and Seven (7) Block Four (4)....

. . .

Tract 2: Real estate situated in Harris County, Texas and more particularly described as being Lots fourteen (14) and fifteen (15), Block Four (4).... *Containing 2.1819 acres of land more or less*[2] ....

---

1. This illustration is not drawn to scale. Lots 6 and 7 contain approximately 1.774 acres. Lots 8 through 12 contain approximately 3.101 acres. Lots 14 and 15 contain approximately 2.1819 acres.

2. The italicized language was written into the deed by hand.

The Ross–Chapa deed required Chapa to construct and maintain a line fence separating his lots—Lots 6, 7, 14, and 15—from Lots 8 through 13. Specifically, the deed provided that Chapa "construct, repair[,] and maintain a line fence on the West of abutting Lots 8, 10, 11, 12, & 13, and on the South Side of Lot 14 to a height of 6 feet." The Ross–Chapa deed was filed with the county property records.

Thereafter, Chapa improved Lots 6 and 7 to operate an automobile collision repair business. Lots 14 and 15 were improved with concrete and used to park business-related vehicles. Ruiz, who was also in the salvage and collision repair business, executed a five-year lease with Chapa on Lots 6, 7, 14, and 15. During the leasehold, Ruiz operated a collision repair business. After the five-year lease expired, Ruiz considered purchasing real estate and decided to rent the four lots on a month-to-month basis.

### B. Ross–Ruiz Deed

On September 16, 2003, Ross executed a special warranty deed with a vendor's lien purporting to convey Lots 6 through 12 to Ruiz ("Ross–Ruiz deed"). The property conveyed in the Ross–Ruiz deed was described as "[a] tract of land containing 4.315 acres, more or less, out of Lots Six (6), Seven (7), Eight (8), Nine (9), Ten (10), Eleven (11) and Twelve (12), Block Four (4)." Although the Ross–Ruiz deed purported to convey Lots 6 and 7, Ross no longer owned these lots: Lots 6 and 7, amounting to 1.1774 acres, were then owned by Chapa by way of the Ross–Chapa deed. Ruiz executed a promissory note in favor of Ross ("Ross–Ruiz promissory note") and filed the deed with the county.

### C. Ruiz–Chapa Contracts

The following year, Ruiz encountered financial trouble and was unable to pay his monthly rent on Lots 6, 7, 14, and 15. Ruiz closed the salvage and collision business, and Chapa took back possession of the lots. Ruiz approached Chapa for financial help, and Chapa gave Ruiz periodic personal loans over the next months. Finally realizing he could no longer pay on Ross's promissory note, Ruiz offered to sell the property subject of the Ross–Ruiz deed to Chapa.

On May 27, 2005, Ruiz and Chapa executed a handwritten contract conveying Lots 6 through 12 to Chapa ("Ruiz–Chapa handwritten contract"). The property in the Ruiz–Chapa handwritten contract was described as "property situated in Harris County at Hwy. 249[,] a tract of land containing 4.315 acres, more or less, out of lots six (6), seven (7), eight (8), nine (9), ten (10), eleven (11), and twelve (12) Block (4)." Although Chapa agreed to purchase Lots 6 and 7 from Ruiz, Chapa apparently did not realize that he in fact owned Lots 6 and 7 by virtue of the Ross–Chapa deed.

As consideration, Chapa agreed to: (1) pay Ross $6,400.00 in past due rent owed by Ruiz on Lots 6 through 12, (2) convey the collision repair business Chapa was operating on Lots 6, 7, 14, and 15 to Ruiz, including tools, equipment, and the company's goodwill, (3) lease Lots 6, 7, 14, and 15 to Ruiz for $6,000.00 a month, and (4) pay Ruiz $10,500.00 in "complimentary rents." Chapa further agreed to pay the remaining balance on the Ross–Ruiz promissory note.

Later the same day, Ruiz and Chapa executed a typed contract conveying the same property to Chapa ("Ruiz–Chapa typed contract"). The consideration generally remained unchanged; however, the legal description of the property was modified. The Ruiz–Chapa typed contract described the property as "[a] tract of land containing 3.101 acres, more or less, out of

Lots 6, 7, 8, 9, 10, 11, 12, Block 4 ... in Harris County." However, the field notes attached to the Ruiz–Chapa typed contract identified only Lots 8 through 12, omitting Lots 6 and 7. Thus, the two Ruiz–Chapa contracts varied in two respects: (1) the handwritten contract purported to convey 4.315 acres of land, while the typed contract purported to convey only 3.101 acres; and (2) the handwritten contract purported to convey Lots 6 through 12, while the typed contract purported to convey Lots 6 through 12 in the general description but only Lots 8 through 12 in the descriptive field notes.

Neither Chapa nor Ruiz attempted to rectify the inconsistencies. The record is silent as to whether a deed was executed between Chapa and Ruiz on their contracts. Still, a deed reflecting Chapa's interest was not filed with the county, and neither contract was filed to disclose Chapa's interest. Furthermore, Ross was not advised of the Chapa–Ruiz contracts. Chapa testified that Ross sold the lots to Ruiz "interest free," and wanted to retain the interest free term. Accordingly, Chapa decided to pay Ross through Ruiz, giving Ruiz the payments to forward to Ross as if Ruiz was still paying on the promissory note. Chapa gave Ruiz the monthly notes, and Ruiz forwarded the payments to Ross over the next year.[3]

### D. Ruiz–Nguyen Deed

On July 17, 2006, Ruiz and his wife executed a general warranty deed with vendor's lien conveying Lots 6 through 12 to Nguyen ("Ruiz–Nguyen deed"). Specifically, the Ruiz–Nguyen deed described the property as "[a] tract of land contain-

ing 3.101 acres, more or less, out of Lots 6, 7, 8, 9, 10, 11 and 12, Block 4 ... in Harris County." Although the Ruiz–Nguyen deed identified Lots 6 through 12, the total acreage of Lots 6 through 12 exceeded 3.101 acres. The attached metes and bounds description, based upon the survey, described only Lots 8 through 12, amounting to 3.101 acres. A loan officer spotted the discrepancy between the metes and bound acreage description and the lot numbers. The loan officer advised that the Ruiz–Nguyen should identify only Lots 8 through 12, excluding lots 6 and 7, because the metes and bounds description was correct. Thus, 3.101 acres was the correct acreage. Because the acreage was correct in the deed and because the discrepancy in the lot numbers was not material to the value of the area sold and financed, Lots 6 and 7 remained in the deed description.

Southwestern financed Nguyen's loan on the property and retained a lien with a deed of trust on the property. At closing, Southwestern paid $192,000.00 cash to Ross for the balance due on the Ross–Ruiz promissory note. Once Nguyen began to develop the property, he and Chapa discovered that Ruiz had sold both of them the same property.

### E. Trial Court Proceedings

Chapa filed suit against Ruiz for breach of contract, alleging that he failed to convey the property to Chapa after consideration was paid and by conveying the same property to Nguyen.[4] Chapa also filed a quantum meruit claim against Ruiz, claiming that Ruiz owed him $27,000.00 in rents under the commercial lease that was si-

---

**3.** The parties agree that the Ruiz–Chapa typed contract is the controlling contract between Ruiz and Chapa. Accordingly, we refer to the typed contract hereinafter as the "Ruiz–Chapa contract."

**4.** Chapa also filed suit against Ruiz's wife for her executing the Ruiz–Nguyen deed, but she was later nonsuited from the case.

multaneously executed with the Ruiz–Chapa contracts. As to Nguyen, Chapa filed a tortious interference with an existing contract claim, alleging that Nguyen knew or had reason to know about the Ruiz–Chapa contracts and Chapa's competing interest in the same property. After filing his lawsuit, Chapa filed the Ruiz–Chapa contract with the county.

Nguyen counterclaimed, alleging that he was a bona fide purchaser. Nguyen claimed that the Ruiz–Chapa typed contract was a cloud on his title and requested that the Chapa–Ruiz contract be declared void and null and, among other things, declare Nguyen's title clear of any cloud and quieted against all claims by Chapa under Texas's recording statute. Southwestern intervened, alleging it was a bona fide mortgagee and held the deed of trust free and clear of Chapa's unrecorded interest. Nguyen and Southwestern further sought subrogation as to Ross's rights and lien priorities in the amount of $192,000.00.[5]

After a jury trial, verdict was returned in favor of Chapa on his contract claims against Ruiz. The jury found that Nguyen did not intentionally interfere with the Ruiz–Chapa contract. However, the jury found against Nguyen on his claim of bona fide purchaser. The jury also found that Southwestern was not a bona fide mortgagee. After a variety of pre- and post-judgment motions, including appellants' motions for JNOV and new trial, the trial court signed a judgment in favor of Chapa, declaring him the owner of the following property with fee simple title, free and clear of any lien and claims of any party in

the underlying cause: a "tract of land containing 3.101 acres, more or less, out of Lots 8, 9, 10, 11, and 12, Block 4 . . . in Harris County." Appellants' motions for JNOV and new trial were denied.

On appeal, Nguyen and Southwestern challenge the trial court's denial of their motions for JNOV and new trial. Appellants contend in their first and second issues that the trial court erroneously denied their motion for JNOV because, as a matter of law, Nguyen is a bona fide purchaser and Southwestern is a bona fide mortgagee. In their third and fourth issues, appellants argue that they were entitled to a new trial because the evidence is factually insufficient to support the jury's findings on the issues of bona fide purchaser and mortgagee.

## II. STANDARDS OF REVIEW

When made on an evidentiary basis, a denial of a motion for JNOV is reviewed under a legal-sufficiency standard. *City of Keller v. Wilson,* 168 S.W.3d 802, 823, 827 (Tex. 2005); *Manon v. Solis,* 142 S.W.3d 380, 387 (Tex.App.-Houston [14th Dist.] 2004, pet. denied); *see also* Tex.R. Civ. P. 301. Accordingly, to determine whether there is some evidence to support a jury's finding and, thus, to determine whether a trial court correctly denied a motion for JNOV, we must view the evidence in the light most favorable to the challenged finding and indulge every reasonable inference that would support it. *City of Keller,* 168 S.W.3d at 822. We credit favorable evidence if reasonable jurors could and disregard contrary evidence unless reasonable

**5.** The trial court also ordered that Nguyen and Southwestern were "subrogated in the amount of $25,984.41 to the lien rights and priorities of the ad valorem taxing authorities of Harris County, Texas for taxes paid for the property . . . for tax years 2004, 2005, 2006 and 2007." The trial court further ordered that the liens by subrogation in favor of Nguyen and Southwestern were "judicially foreclosed against the property . . . if payment of the subrogated sums is not made available by . . . Chapa . . . within 30 days from the date this judgment is final and all appeals are exhausted."

jurors could not. *Id.* at 827. If more than a scintilla of evidence supports the jury's finding, the jury's verdict must be upheld. *Formosa Plastics Corp., USA v. Presidio Eng'rs & Contractors, Inc.,* 960 S.W.2d 41, 48 (Tex.1998); *Wal-Mart Stores, Inc. v. Miller,* 102 S.W.3d 706, 709 (Tex.2003). More than a scintilla exists if the evidence "rises to a level that would enable reasonable and fair-minded people to differ in their conclusions." *Ford Motor Co. v. Ridgway,* 135 S.W.3d 598, 601 (Tex.2004) (quoting *Merrell Dow Pharm., Inc. v. Havner,* 953 S.W.2d 706, 711 (Tex.1997)). Conversely, evidence that is "so weak as to do no more than create a mere surmise" or suspicion is no more than a scintilla and, thus, no evidence. *Id.* (quoting *Kindred v. Con/Chem., Inc.,* 650 S.W.2d 61, 63 (Tex. 1983)).

We review the denial of a motion for new trial under an abuse-of-discretion standard. *Strackbein v. Prewitt,* 671 S.W.2d 37, 38 (Tex.1984); *Ashworth v. Brzoska,* 274 S.W.3d 324, 328 (Tex.App.-Houston [14th Dist.] 2008, no pet.). An abuse of discretion occurs if the trial court acts without reference to any guiding rules or principles. *Goode v. Shoukfeh,* 943 S.W.2d 441, 446 (Tex.1997).

### III. ANALYSIS

In their first two issues, appellants contend that they conclusively established Nguyen is a bona fide purchaser and Southwestern is a bona fide mortgagee. Under Texas law, an unrecorded conveyance of an interest in real property is void as to a subsequent purchaser who purchases the property for valuable consideration and without notice. Tex. Prop. Code § 13.001(a). However, the unrecorded instrument is binding on a subsequent purchaser who does not pay a valuable consideration or who has notice of the instrument. *Id.* § 13.001(b). Thus, to re-

ceive the bona fide purchaser protection, a party must acquire the property in good faith, for value, and without notice of any third-party claim or interest. *Madison v. Gordon,* 39 S.W.3d 604, 606 (Tex.2001) (per curiam); *Pierson v. McClintock,* 34 Tex. Civ.App. 360, 78 S.W. 706, 707–08 (Galveston 1904, no writ) (finding bona fide purchaser protection where holder under an innocent purchase for value had no notice of plaintiff's claim to the same property). A bona fide mortgagee takes a lien in good faith, for valuable consideration, and without notice of outstanding claims. *Continental Radio Co. v. Continental Bank & Trust Co.,* 369 S.W.2d 359, 362 (Tex.Civ. App.-Houston 1963, writ ref'd n.r.e.).

Notice of a third-party's claim or interest can be either actual or constructive, which has been broadly defined as information concerning a fact actually communicated to a person, derived by him from a proper source, or presumed by law to have been acquired. *Madison,* 39 S.W.3d at 606; *Flack v. First Nat'l Bank,* 148 Tex. 495, 226 S.W.2d 628, 631 (1950). Generally, the question of whether a party has notice is a question of fact; it becomes a question of law only when there is no room for ordinary minds to differ as to the proper conclusion to be drawn from the evidence. *O'Ferral v. Coolidge,* 149 Tex. 61, 228 S.W.2d 146, 148 (1950).

#### A. Actual Notice

A subsequent purchaser has actual notice if he has personal information or express knowledge of an adverse right. *See Madison,* 39 S.W.3d at 606. The only evidence of actual knowledge at trial was Chapa's testimony that once he and Nguyen realized Ruiz had sold each of them the same property, Nguyen asked Chapa if he had filed his interest with Harris County. Chapa answered no, and Nguyen replied "bad luck for you." Chapa contends

that Nguyen's inquiry and response shows that he knew of Chapa's interest and knew Chapa did not file the interest with the county. Contrary to Chapa's argument, Nguyen's query is not evidence that he had personal or express knowledge that Chapa had a competing interest in the same property. Rather, Nguyen's statements merely reflect his knowledge of a party's duty to record interest in real estate. Nguyen's question and reply are not evidence of actual knowledge; at best, this evidence provides nothing more than basis for surmise, guess, or conjecture as to Nguyen's knowledge of Chapa's interest. Accordingly, we find no more than a scintilla of evidence that Nguyen and Southwestern had actual knowledge of Chapa's unrecorded competing interest by personal or express knowledge.

### B. Constructive Notice

Constructive notice is notice the law imputes to a person not having personal information or knowledge. *Flack*, 226 S.W.2d at 632. One form of constructive knowledge imputes notice where a subsequent purchaser has a duty to ascertain the rights of a party in possession. *Id.* The duty to ascertain arises only if the possession is visible, open, exclusive, and unequivocal. *Id.* This case, however, is not a constructive-knowledge-by-possession case. The record reflects, and the parties do not dispute, that there were no visible signs of possession on the property: it was vacant, undeveloped, and bordered by a line fence separating the 3.101 acres from Lots 6, 7, 14, and 15. Accordingly, we find as a matter of law that Nguyen and Southwestern did not have constructive knowledge by possession.

Nevertheless, a subsequent purchaser is also charged with notice of the terms in deeds which form an essential link in his chain of ownership. *See Colvin*

*v. Alta Mesa Resources, Inc.*, 920 S.W.2d 688, 691 (Tex.App.-Houston [1st Dist.] 1996, writ denied); *Portman v. Earnhart*, 343 S.W.2d 294, 297 (Tex.Civ.App.-Dallas 1960, writ ref'd n.r.e.). A purchaser is bound by every recital, reference, and reservation contained in or fairly disclosed by an instrument that forms an essential link in the chain of title under which he claims. *Westland Oil Dev. Corp. v. Gulf Oil Corp.*, 637 S.W.2d 903, 908 (Tex.1982). The Ross–Chapa deed, conveying Lots 6, 7, 14, and 15 to Chapa, fell within Nguyen's chain of title. As a result, Nguyen and Southwestern are charged with constructive knowledge of Chapa's competing interest as to Lots 6 and 7. *See id.* However, Nguyen and Southwestern neither dispute their constructive knowledge as to the competing interest on Lots 6 and 7, nor do they claim bona fide purchaser protection as to these lots. Instead, Nguyen and Southwestern contend that they did not have notice of Chapa's claim to the 3.101 acres in which Lots 8 through 12 were situated. It is a well-established rule that a deed or instrument lying outside of his chain of title imports no notice. *See Bryant v. Buckner*, 67 Tex. 107, 2 S.W. 452, 454–56 (1886); *Nelson v. Bridge*, 39 Tex.Civ.App. 283, 87 S.W. 885, 887 (Galveston 1905, writ denied). Here, the trial evidence conclusively established that no claim to the 3.101 acres described in Ruiz–Nguyen was filed with the county. Accordingly, Nguyen and Southwestern had no constructive notice of Chapa's competing interest as to the 3.101 encompassing Lots 8 through 12 because of its lying outside of Nguyen's chain of title.

### C. Notice By Inquiry

Although a deed outside the chain of title does not impute constructive knowledge, a person may be charged with the duty to make a reasonable diligent

inquiry using the facts at hand in the recorded deed. *Portman,* 343 S.W.2d at 299; *Flack,* 226 S.W.2d at 631 (concluding that although actual notice as been generally defined as to be information directly communicated to the person to be affected, the term also embraces knowledge of all those facts which reasonable inquiry would have disclosed, the duty of inquiry extending only to matters that are fairly suggested by the facts really known). Thus, every purchaser of land is charged with knowledge of all facts appearing in the chain of title through which he claims that would place a reasonably prudent person on inquiry as to the rights of other parties in the property conveyed. *Williams v. Jennings,* 755 S.W.2d 874, 882 (Tex.App.-Houston [14th Dist.] 1988, writ denied). Accordingly, if Nguyen or Southwestern had knowledge of any fact or circumstance sufficient to put a prudent man upon inquiry which, if prosecuted with ordinary diligence, would lead to actual notice of Chapa's claim to the 3.101 acres, Nguyen and Southwestern are charged with such knowledge. *See id.*

■ In determining whether Nguyen and Southwestern were charged with a duty to make a reasonable inquiry as to the 3.101 acres, we review which facts were known to them at the time he purchased the property. *See Portman,* 343 S.W.2d at 300 (stating that a reasonable inquiry begins with facts at hand known to the subsequent purchaser, namely, facts contained in the recorded deed). The actual and constructive knowledge possessed by Nguyen and Southwestern at the time Nguyen purchased the 3.101 acres was: (1) Chapa owned Lots 6, 7, 14, and 15 by virtue of the Ross–Chapa deed; (2) the acreage sold in the Ross–Chapa deed did not include the 3.101 acres Nguyen purchased from Ruiz; (3) Nguyen's deed erroneously identified Lots 6 and 7, but exclud-

ed the 1.774 acres in which Lots 6 and 7 were situated; and (4) no deed or interest was filed reflecting an interest in Lots 8 through 12 or the 3.101 acres in which Lots 8 through 12 were positioned. Although the misnumbering of Lots 6 and 7 may have triggered a duty to inquire into competing interests on these two lots, an ordinary diligent and prudent inspection of the real property records would not have revealed Chapa's claim to the 3.101 acres in Lots 8 through 12 necessary to establish actual or constructive knowledge. Still, Chapa contends that the misnumbering of Lots 6 and 7 charged Nguyen to go beyond inspection of the real property records and approach Chapa to determine whether he had an interest in Lots 8 through 12. Contrary to Chapa's argument, the law imposes no such duty under these facts. *See id.* at 300 (reasoning that reasonable diligence in making inquiry regarding a deed entirely outside the chain of title does not necessarily include interrogation of every grantor).

There is nothing in the chain of title showing or tending to show that Chapa had any claim to the 3.101 acres conveyed to Nguyen. The Ross–Chapa deed did not relate or refer to claims to Lots 8 through 12 or the 3.101 acres subject of the Ruiz–Nguyen deed. The acreage in the Ross–Chapa deed conveyed two tracts of land: Tract 1 containing 1.774 acres (Lots 6 and 7) and Tract 2 containing 2.1819 acres (Lots 14 and 15). The Ross–Chapa deed contains no description of the 3.101 acres conveyed to. There was no recorded claim as to the 3.101 acres and no proof of payment of taxes by anyone but Ruiz. Because there was nothing to direct Nguyen's or Southwestern's attention to the fact that Chapa had purchased Lots 8 through 12 or the 3.101 acres encompassing these five lots, notice of the defect in the chain of title—the misnumbering of the lot numbers—defeats neither Nguyen's

status as a bona fide purchaser nor Southwestern's status as a bona fide mortgagee.

The facts before Nguyen and Southwestern did not trigger a duty to inquire beyond the county records as to competing interests to Lots 8 through 12 containing the 3.101 acres. Furthermore, because the real property records did not reveal a competing interest or information giving rise to search beyond the real property records, Nguyen and Southwestern did not have notice by inquiry. We conclude that there is no more than a scintilla of evidence to put Nguyen or Southwestern on notice of Chapa's unrecorded competing interest as to Lots 8 through 12. The evidence is legally insufficient to support the jury's findings that Nguyen was not a bona fide purchaser and Southwestern was not a bona fide mortgagee because there is no evidence that they had actual or constructive notice. Therefore, we find, as a matter of law, that Nguyen is a bona fide purchaser and Southwestern is a bona fide mortgagee. We sustain appellants' first two issues and reverse the trial court's judgment. Having sustained these issues, we need not address issues three and four.

## IV. CONCLUSION

Having resolved issues one and two in favor of appellants, we **reverse** the portion of the trial court's judgment awarding title, in fee simple, and possession of the property subject of this case to Chapa free and clear of any lien or claim by appellants and **remand** to the trial court for the entry of a judgment reflecting that: (1) Chapa take nothing against Nguyen and Southwestern, (2) Nguyen take title and possession of the property subject of this case free and clear of any claim or lien by Chapa and remove any cloud on Nguyen's title, and (3) Southwestern's deed of trust lien on the property at issue in this case has priority over any rights Chapa has in the property.

We **reverse** the portion of the trial court's judgment awarding Nguyen and Southwestern subrogation liens and **remand** for all further proceedings necessary to remove Nguyen's and Southwestern's subrogation liens against the property, reinstate Southwestern's purchase money lien, and determine any outstanding interest, if any, Chapa has in the property consistent with this opinion.

We affirm the remaining portions of the trial court's judgment.