02-10-370-CV













 
 
 
 
 
 
 
 
 
 
 
 
 
 COURT OF APPEALS
 SECOND DISTRICT OF TEXAS
 FORT WORTH
  
 
 


 

NO. 02-10-00370-CV

 


 
 
 Aston Meadows, Ltd., Montclaire
 Custom Homes, L.P., Peter Paulsen, Steve Paulsen, Mike Wells, KATHRYN Leblanc,
 Donald Leblanc, Natalie J. Warnick, James S. Warnick, and Kathy Ivey
 
 
  
 
 
 APPELLANTS
 
 
 
 
  
 V.
  
 
 
 
 
 Devon Energy Production Company,
 L.P. and Devon Energy Corporation
 
 
  
 
 
 APPELLEES
 
 


 

----------

 

FROM THE
141st District Court OF Tarrant
COUNTY

----------

 

OPINION

----------

          Aston Meadows, Ltd., Montclaire Custom
Homes, L.P., Peter Paulsen, Steve Paulsen, Mike Wells, Kathryn LeBlanc, Donald
LeBlanc, Natalie J. Warnick, James S. Warnick, and Kathy Ivey (collectively,
appellants) appeal from a summary judgment in favor of appellees Devon Energy
Production Company, L.P. and Devon Energy Corporation.  Appellants bring seven issues challenging the
propriety of the summary judgment for appellees and the trial court’s denial of
Aston Meadows’s and Ivey’s cross-motions for summary judgment.  Appellants also bring two issues challenging
the trial court’s evidentiary rulings as to Ivey’s summary judgment evidence.  Appellees bring a conditional cross-issue
challenging the trial court’s refusal to award them attorney’s fees.  We affirm.

Background

Aston
Meadows purchased 182.024 acres (the Property) in northern Tarrant County in
March 2001 to be used as a residential development; it subdivided the property
and recorded a plat.[1]  Aston Meadows also obtained a title policy in
connection with the purchase.  Unbeknownst
to all of the appellants, the entire Property, which had been part of a larger
tract located in both Tarrant and Wise Counties, was subject to a 1977 oil,
gas, and mineral lease (the Lease) that encumbered several hundred acres of the
larger tract in both Tarrant and Wise Counties. 
The Lease was recorded in Wise County only in 1977.  The Lease was not shown as an encumbrance on
Aston Meadows’s title policy, and it was not recorded in Tarrant County until
April 2002, after Aston Meadows purchased the Property.

          Devon Energy Production Company, L.P.
is the successor to the original lessee under the Lease.  When Aston Meadows purchased the Property,
there were no signs of any oil or gas production.  However, in June 2007, appellants sued Devon
and its parent company, Devon Energy Corporation, alleging that appellees had
impermissibly drilled horizontally under the Property.  Appellants sought a declaration that the
Lease was invalid because it was not recorded in Tarrant County when Aston
Meadows purchased the Property and, therefore, appellants were bona fide
purchasers for value.  They also sought
damages for conversion and trespass, as well as injunctive relief.  In the alternative, they brought a claim for
breach of contract under the Lease, claiming as damages royalties under the
Lease that they had not yet been paid.[2]

Appellees
filed a motion for summary judgment contending that appellants had constructive
notice of the Lease because it was properly recorded in Wise County under
section 11.001(a) of the property code.  Aston
Meadows and Ivey filed cross-motions for summary judgment contending, among
other things, that they are bona fide purchasers for value because section
11.001(a) does not control here; thus, they did not have constructive notice of
the Lease.  They also claimed in the alternative
that they did not have inquiry notice of the Lease.  In several orders, the trial court granted
appellees’ motion for summary judgment, denied Aston Meadows’s and Ivey’s, and
rendered a final judgment dismissing all of appellants’ claims against appellees.

Analysis

          In their first seven issues,
appellants challenge the trial court’s rulings on the competing summary
judgment motions; their issues all relate to the trial court’s resolution of
the question of law regarding whether appellants had notice of the Lease.

Applicable Law

Notice
sufficient to defeat bona fide purchaser status may be actual or
constructive.  Noble Mortg. & Invs., LLC v. D & M Invs., LLC, 340 S.W.3d
65, 76 (Tex. App.––Houston [1st Dist.] 2011, no pet.).  Actual notice rests on personal information
or knowledge.  Madison v. Gordon, 39 S.W.3d 604, 606 (Tex. 2001); Noble Mortg., 340 S.W.3d at 76.  Constructive notice is notice the law imputes
to a person not having personal information or knowledge.  Madison,
39 S.W.3d at 606; Noble Mortg., 340
S.W.3d at 76.  Constructive notice
creates an irrebuttable presumption of actual notice in some
circumstances.  See HECI Exploration Co. v. Neel, 982 S.W.2d 881, 887 (Tex. 1998); Noble Mortg., 340 S.W.3d at 76.

          The Texas Property Code provides that
an “instrument that is properly recorded in the proper county is . . . notice
to all persons of the existence of the instrument.”  Tex. Prop. Code Ann. § 13.002 (West 2004).  Recorded instruments in a grantee’s chain of
title generally establish an irrebuttable presumption of notice.  Ford v.
Exxon Mobil Chem. Co., 235 S.W.3d 615, 617 (Tex. 2007); Noble Mortg., 340 S.W.3d at 76; see also HECI Exploration Co., 982
S.W.2d at 887 (“The need for stability and certainty regarding titles to real
property has led courts to hold that real property records can constitute
constructive notice.”); Westland Oil Dev.
Corp. v. Gulf Oil Corp., 637 S.W.2d 903, 908 (Tex. 1982) (“It is well
settled that ‘a purchaser is bound by every
recital, reference and reservation contained in or fairly disclosed by any
instrument which forms an essential link in the chain of title under which he
claims.’”).  A person may also be charged
with constructive notice for a deed outside his chain of title if facts
appearing in the chain of title through which he claims would place a
reasonably prudent person on inquiry as to the rights of other parties in the
property conveyed.  Noble Mortg., 340 S.W.3d at 76; Nguyen
v. Chapa, 305 S.W.3d 316, 324–25 (Tex. App.––Houston [14th Dist.] 2009, pet.
denied).

Property
code section 11.001(a) provides that “[t]o be effectively recorded, an
instrument relating to real property must be eligible for recording and must be
recorded in the county in which a part of the property is located.”  Tex. Prop. Code Ann. § 11.001(a) (West Supp.
2011).  Section 11.001 was enacted in
1983 as a nonsubstantive recodification of the property-related revised civil
statutes.  See Act of May 26, 1983, 68th Leg., R.S., ch. 576, § 1, sec.
1.001(a), 1983 Tex. Gen. Laws 3475, 3478. 
The substance of the predecessor to section 11.001 was initially enacted
in 1887,[3] has not significantly
changed since then, and has been consistently construed by appellate courts to
provide that if a single tract of land spans multiple counties, recording in
either of the counties in which part of the tract is located is sufficient to
provide constructive notice.  See, e.g., Brown v. Lazarus, 25 S.W. 71,
73 (Tex. Civ. App. 1893)[4] (“Article
4333, Rev. St., provides that ‘all deeds, conveyances, mortgages, deeds of
trust, or other written contracts relating to real estate, which are authorized
to be recorded, shall be recorded in the county where such real estate, or a
part thereof, is situated.’”).[5]

          In Brown
v. Lazarus, the Court of Civil Appeals held,

From so much of the judgment as denied
appellees Lazarus and the Western Mortgage & Investment Company, Limited, a
recovery against the other appellees of that part of the tract of 3,111 acres
which is situated in Wichita [C]ounty, they have prosecuted a cross
appeal.  They claim as purchasers under a
deed of trust which was duly recorded in Archer [C]ounty, where about one-half
of said tract of land is situated.  The
other appellees claim as purchasers at execution sale made in Wichita [C]ounty
by virtue of a levy subsequent to the registration of the deed of trust in
Archer [C]ounty, of which deed of trust the plaintiff in execution had no
actual notice at the date of the levy. 
The entire tract of land was described in the patent, and in the
subsequent conveyances, including the deed of trust, as situated in Archer [C]ounty,
but with the field notes therein set out. 
Article 4333, Rev. St., provides that ‘all deeds, conveyances,
mortgages, deeds of trust, or other written contracts relating to real estate,
which are authorized to be recorded, shall be recorded in the county where such
real estate, or a part thereof, is situated.’ 
The succeeding article provides that ‘every conveyance, covenant,
agreement, deed of trust, or mortgage in this chapter mentioned, which shall be
acknowledged, proved or certified according to law, and delivered to the clerk
of the proper court to be recorded, shall take effect and be valid as to all
subsequent purchasers for a valuable consideration, without notice, and as to all
creditors, from the time when such instrument shall be so acknowledged, proved,
or certified and delivered to such clerk to be recorded, and from that time
only.’  The language of these articles
indicates very clearly, we think, that when the holder of the deed of trust had
it recorded in Archer [C]ounty, where all the land purported to be situated,
and where ‘a part’ (one-half) of the entire tract was situated, the statute was
fully complied with, and the lien thereby secured must be protected against ‘all
creditors,’ as therein provided.  The tract being a unit, record in either
county would be sufficient constructive notice.  The language employed by the present chief
justice of our supreme court in Hancock
v. Lumber Co., 65 Tex. 232, in construing this statute, while not necessary
to a decision of that case, seems to us to state the rule correctly.  It follows, therefore, that as to so much of
this tract as lies in Wichita [C]ounty[,] the judgment must be reversed, and
here rendered in accordance with this conclusion, for the entire tract, in
favor of said appellees, who recovered only that part which is situated in
Archer [C]ounty.

25
S.W. at 73 (emphasis added).

          Appellants contend that Brown is distinguishable because (1) the
predecessor statute which it references involved “specific creditor language,”
which current section 11.001(a) does not contain, (2) it dealt with the
recording of a deed of trust rather than an oil and gas lease, (3) the deeds at
issue in Brown described the land as
being located only in the county in which the deed of trust was recorded even
though the metes and bounds description indicated the land was actually located
in two counties, and (4) the purchaser in Brown
obtained property known to be located in two counties.

          The “specific creditor” language in
the prior statute does not distinguish the statute at issue in Brown from the language in section
11.001(a); Brown’s construction of
the applicable part of the prior statute does not turn on the “specific
creditor” language.  Instead, that
language reiterates as against whom and when a properly recorded deed gives
constructive notice.  Id. 
Additionally, that Brown
involved a deed of trust rather than an oil and gas lease is of no import:  both section 11.001(a) and its predecessor
apply to instruments or contracts related to real estate; an oil and gas lease,
like a deed of trust, is clearly an instrument related to real property.  See
Tittizer v. Union Gas Corp., 171 S.W.3d 857, 860 (Tex. 2005) (“An oil and
gas lease is a contract, and its terms are interpreted as such.”).

          Although the deed of trust at issue in
Brown did describe the land as being
located in Archer County (even though part of it was also located in Wichita
County according to the metes and bounds description), the court’s opinion did
not turn on that description but rather on compliance with the statute, by
virtue of the fact that part of the land was actually located in Archer
County.  See Brown, 25 S.W. at 73. 
Additionally, the deed to Aston Meadows, although describing property as
being located in Tarrant County, also describes it as “a portion of that
certain tract of land described in deed to the The Jack W. Wilson Family Trust,
recorded in Volume 11964, page 683, Deed Records, Tarrant County, Texas.”  The deed to the Jack W. Wilson Family Trust
describes the property being conveyed as located in “Tarrant County and Wise
County.”  See Tex. Prop. Code Ann. § 11.007 (West 2004) (“A reference in an
instrument to the volume and page number, film code number, or county clerk
file number of the ‘real property records’ (or other words of similar import)
for a particular county is equivalent to a reference to the deed records, deed
of trust records, or other specific records, for the purpose of providing
effective notice to all persons of the existence of the referenced instrument.”).[6]

          Finally, it is unclear whether the
parties who recovered the Wichita County part of the tract in Brown were claiming title to the entire tract,
including the part in Archer County, or only the part in Wichita County.  The appellate court does not say if those
parties had claimed the entire tract at trial although we note that the trial
court had already awarded the Archer County part to Lazarus, so the only part of
the tract at issue on appeal was the part in Wichita County.  Brown,
25 S.W. at 73.  Thus, Brown is not distinguishable on that
basis.

          We conclude and hold that the correct
statutory construction of section 11.001(a) is that when an instrument relates
to a contiguous tract of land located in more than one county, the recording of
that instrument in only one of the counties is sufficient to comply with the
requirements of section 11.001(a).

Effect of Subdivision of Larger Tract on
Recording Requirements

Appellants
contend that this construction of section 11.001 improperly places the burden
on a purchaser of property that has been subdivided from a larger, multi-county
tract into a single county tract to search the property records of multiple
counties for prior recorded instruments. 
Appellants contend that even if the Lease was properly recorded
initially, it is not effective as to appellants because the character of the Property
changed once it was “no longer being treated as a single tract or unit.”

According
to appellants, a purchaser should be required to search property records only
in the county in which the purchased property is located.  However, such a rule would place the burden
on a recorder of a prior instrument conveying an interest in real property
(such as a deed of trust or oil and gas lease) to continually check property
records for evidence of subsequent subdivision by the owner and of recordings
by subsequent purchasers.  This would
turn our recording system, which provides for a system of constructive notice
to subsequent purchasers of prior recorded documents, on its head.

As
pointed out by appellees, a prospective purchaser can protect its rights by
“examining the chain of title to the property to be acquired and searching the
real property records of all counties
referenced in the chain of title.” 
[Emphasis added.]  Such a burden does
not seem to be as onerous in a case, such as this one, in which title insurance
was obtained; the title company’s abstract plant maintains records based on
past chains of title rather than being searchable for prospective
purchasers.  See Tex. Ins. Code Ann. § 2501.004 (West Supp. 2011); Noble Mortg., 340 S.W.3d at 79–80; Sanchez v. Telles, 960 S.W.2d 762, 767
(Tex. App.––El Paso 1997, pet. denied) (“The intention of the recording acts is
to compel every person receiving conveyances of real property to place such an
instrument of record, not only that he may thereby protect his own rights, but
also those of all others who may
afterwards seek to acquire an interest in the same property.” (emphasis
added)).  Moreover, by enacting section
11.001(a), it is the legislature that has chosen to place the burden on
subsequent purchasers of subdivided property to check all applicable property
records rather than on prior recorders of instruments to continually check for
subsequent recorded documents.

Appellants
contend that this interpretation of section 11.001(a) conflicts with sections
11.001(b) and 12.005 of the property code. 
Section 11.001(b) provides that if an instrument is recorded in a proper
county, and a new county is later formed “containing property conveyed or
encumbered by the instrument,” the creation of the new county “does not affect
the recording’s validity or effect as notice.” 
Tex. Prop. Code Ann. § 11.001(b) (West Supp. 2011).  The county court of the new county must, at
its own expense, “obtain a certified transcript of the record of all
instruments conveying or encumbering property in the new county[,] . . . deposit
the transcript for public inspection in the recorder’s office of the new
county[,] and . . . make an index of the transcript.”  Id.  However, this part of the statute does not
make the validity of the instrument dependent on the new county’s recording of
the instrument in that county’s records; instead, it very clearly states that
the formation of the new county does not
affect the validity of the prior recorded instrument as to notice.  Thus, our interpretation of section 11.001(a)
does not conflict with section 11.001(b).

Moreover,
our interpretation of the statute does not conflict with section 12.005 either,
which provides that “[a] court order partitioning or allowing recovery of title
to land must be recorded with the county clerk of the county in which the land
is located in order to be admitted as evidence to support a right claimed under
the order.”  Id. § 12.005(a) (West 2004). 
This provision is intended to provide for a court order, which is not
normally required to be recorded in a county’s real property records, to serve
as constructive notice; it is inapposite to the proper construction of section
11.001(a).

Where is Property Located?

Appellants contend that even if this court
interprets section 11.001(a) as giving constructive notice if the instrument is
recorded in only one county, appellees did not conclusively establish recording
in the proper county because the premises originally leased to appellees’
predecessor consisted of three separate and distinct tracts, rather than just
the two purportedly described in the Lease, and that the third tract was
located completely in Tarrant County and therefore is not part of a larger
tract spanning multiple counties.

A
visual depiction of the two tracts described in the Lease is attached to this
opinion as an addendum.  The first tract
is located in both Wise and Tarrant Counties and is shown in yellow.  The second tract is described by metes and
bounds and consists of two almost squares meeting at a point in the middle
(similar to a figure eight with squared figures instead of loops); it is shown
in green.  The western part of the second
tract is located in both Wise and Tarrant Counties, but the eastern part is
located solely within Tarrant County. 
Most of the Property is comprised of the eastern part of Tract II.  According to appellants, because the eastern
part of Tract II is located solely within Tarrant County, section 11.001(a)
does not apply, and the law requires the Lease to be recorded in both counties
because the eastern part is a separate and distinct tract of land.  See Hancock,
65 Tex. at 232 (“We do not think, however, that the registration of a deed, or
other instrument which affects the title to several separate or distinct tracts
of land situated in different counties, in a county in which some of the tracts
may be situated, would be such registration as would operate as notice of the
deed or other instrument, in so far as the same might embrace lands not
situated in the county in which registration is made.”).

Here,
a careful reading of the entirety of the Lease[7] shows
that the grantors were not intending to convey separate lease rights in
distinct tracts of land, but rather the same interest in an entire tract that
was described in two parts.  The Lease
begins by stating that the lessor “grants, leases and lets exclusively . . .
the following described land,” after which is a description of the two
tracts.  After the descriptions of the
two tracts, which are titled “Tract I” and “Tract II” and comprise two
paragraphs, is the following:  “LESS AND
EXCEPT from the above two tracts . .
. 526.52 acres of land located in the M. Ashton Survey, Abstract 1 and Chas.
Fleishner Survey, Abstract 310 . . . .”  [Emphasis
added.]  Following the property
descriptions is this statement:  “This
lease also covers and includes all land owned or claimed by Lessor adjacent or
contiguous to the land particularly described above, whether the same be in
said survey or surveys or in adjacent surveys, although not included within the
boundaries of the land particularly described above.”  Thus, we conclude and hold that the Lease did
not intend to apply to two or three separate tracts in different counties, but
rather to one contiguous tract described in two parts.  Therefore, section 11.001(a) applies.

Conclusion

Based on the foregoing, we conclude and hold
that the trial court did not err by granting summary judgment for appellees.  Because Aston Meadows’s and Ivey’s motions
for summary judgment were based on the interpretation of the statute that we
reject here, we also conclude and hold that the trial court did not err by
denying those motions for summary judgment. 
We overrule appellant’s first through seventh issues.[8]

Evidentiary Issues

In
their eighth and ninth issues, appellants contend that the trial court abused
its discretion by (1) excluding an affidavit with attached exhibits from
Gregory S. Iffland in response to Ivey’s motion for summary judgment on the
ground that Iffland had not been disclosed as a witness and (2) excluding parts
of Ivey’s affidavit.  However, even if
the trial court did abuse its discretion by excluding that evidence, the
exclusion did not cause the rendition of an improper verdict because that
evidence would not change the trial court’s answer to the question of law
resolved in the summary judgment for appellees.[9]  See
Tex. R. App. P. 44.1(a)(1).  Accordingly,
we overrule appellants’ eighth and ninth issues.

Conclusion

          Having overruled appellants’ nine
issues, we affirm the trial court’s judgment. 
Because appellees’ cross-issue is contingent on this court’s granting
relief to appellants, we need not address it. 
See Tex. R. App. P. 47.1.

 

 

 

TERRIE LIVINGSTON
CHIEF JUSTICE

 

PANEL:  LIVINGSTON, C.J.;
DAUPHINOT, J.; and WILLIAM BRIGHAM (Senior Justice, Retired, Sitting by
Assignment).

 

DELIVERED:  January 26, 2012












 



 











[1]Both
Peter and Steve Paulsen and Wells have interests in Aston Meadows.  Montclaire, the LeBlancs, the Warnicks, and
Ivey all purchased lots in the subdivision from Aston Meadows.





[2]During
this suit, the parties entered into a settlement agreement regarding the
payment of past due royalties.





[3]Act
approved April 1, 1887, 20th Leg., R.S., ch. 102, § 1, 1887 Tex. Gen. Laws 892,
892.





[4]According
to Texas Jurisprudence, when “a deed
or other instrument affects the title to land in one tract that is partly in
one county and partly in another, recordation in either county is notice as to
all the land.”  64 Tex. Jur. 3d Records and Recording Laws § 42 (2003); see Steven C. Haley, The Recording Statute in Texas (and the
Innocent Purchaser Doctrine), State Bar of Tex. Prof. Dev. Program, Advanced
Real Estate Law Course (2007) (“If one property is located in two different
counties, recordation in one of those two counties is sufficient, even if only
an insignificant part of the land lies in the county of recordation.”
(footnotes omitted)), available at http://www.moormantate.com/stevenPub%20PDF/The%20Recording%20Statute%20(00037193).PDF.  Both of these sources cite cases dating to
the 1880s in support of this proposition. 
See, e.g., Hancock v. Tram Lumber Co., 65 Tex. 225,
232 (1885); Tom v. Kenedy Nat’l Farm Loan
Ass’n, 123 S.W.2d 416, 419 (Tex. Civ. App.––El Paso 1938, no writ); Haines v. West, 102 S.W. 436, 439 (Tex.
Civ. App.), aff’d, 105 S.W. 1118
(1907).





[5]Appellants
contend that because the statute says that a deed should be recorded in “the
county in which a part of the property is located” rather than “a county” or
“any county,” the statute should be construed to particularize the word
“county” so that an instrument must be recorded in each county in which a part of the property is located.  However, their argument is self-defeating; if
“the” particularizes the word “county,” then recording in only one county
rather than multiple counties is what is contemplated by the statute.  See
Steger & Bizzell, Inc. v. Vandewater Constr., Inc., 811 S.W.2d 687, 693
(Tex. App.––Austin 1991, writ denied) (“Next, the term ‘the’ preceding the term
‘transaction’ indicates that the statute is referring to the solicitation of
one particular transaction.”).





[6]Although
the references in the deed to Aston Meadows relate more properly to the issue
of inquiry notice, we discuss them here to show that the court’s decision, and
interpretation of the statute, in Brown
was based on the property’s actual location rather than its description in the
deed.  See Westland Oil Dev. Corp. v. Gulf Oil Corp., 637 S.W.2d 903, 908
(Tex. 1982); Boswell v. Farm & Home
Sav. Ass’n, 894 S.W.2d 761, 766 (Tex. App.––Fort Worth 1994, writ denied).





[7]We
review an unambiguous lease de novo as a question of law; our primary duty is
to ascertain the parties’ intent as expressed within the lease’s four corners,
harmonizing all of its parts.  Anadarko Petroleum Corp. v. Thompson, 94
S.W.3d 550, 554 (Tex. 2002).





[8]To
the extent those issues raise inquiry notice, we do not address them.  See
Tex. R. App. P. 47.1.





[9]Although
the trial court excluded the evidence as to Ivey’s response to appellees’
motion for summary judgment, it did not do so as to Ivey’s motion for summary
judgment, or the prior cross-motions for summary judgment filed between Aston Meadows
and appellees.