YVONNE T. RODRIGUEZ, Justice
Appellant appeals the trial court's judgment against him in the amount of $12,594.03 for breach of contract. In a single issue, Appellant claims there was legally and factually insufficient evidence to support the trial court's finding that he was in breach of contract when he evicted Appellee from the job site before the contract was fulfilled because he was free to terminate the agreement at his convenience. Alternatively, he asserts that the evidence clearly established the Appellee breached the contract before Appellant's alleged breach. We affirm.
*153 BACKGROUND
Eduardo De Avila, as sole proprietor of Avilart MDA Construction, entered into a contract with Espinoza Metal Building & Roofing Contractor in February 2011 to preform roofing repairs at the Tigua Business Center in El Paso, Texas. Juan Espinoza headed the building and roofing company and was one of a number of subcontractors working on the project for De Avila. The contract required Espinoza to install a type of energy-efficient roofing-system, known as Thermoplastic Polyolefin TPO Roofing, which Espinoza had been specially certified to install by the manufacturer. The contract provided Espinoza would be paid $87,475 for the job. No timetable or date of completion was specified for the installation, but the contract provided that "Time is of the essence of the Subcontract." A provision of the contract also allowed De Avila to terminate the contract with or without cause by providing forty-eight hours' notice of termination in writing. The contract further required that any modifications to the agreement be made in a writing signed by both parties.
Espinoza began working on the roofing system in August 2011. The trouble began in October. Demolition by other subcontractors was ongoing, and at some point a decision was made to move HVAC units from the interior of the building-as provided for in the original contract-to the roof, which required holes to be drilled in the roof for installation. The roofing system was almost complete when the other contractors began drilling the holes in the roof for the HVAC installation. With the holes now drilled, Espinoza would need to install new insulation, bonding adhesive, roofing material, and counter flashing all at additional cost in order to maintain the 20-year manufacturer's warranty for the TPO roof system. Espinoza prepared a change order-a written proposal for modification to the original contract-quoting a $650 estimate per unit for labor and parts for the eight HVAC units. The change order also quoted $50 per TPO boot-a device for the HVAC roof penetrations that was provided by the TPO manufacturer-and estimated four boots per HVAC unit would be needed. Espinoza sent the change order to De Avila on October 25, 2011.
Initially, there was no response from De Avila to the change order; instead, a quarrel began regarding Espinoza's performance to date. On November 22, De Avila sent an email to Espinoza requesting he fix alleged roof leaks and make the penetrations for the HVAC units water tight. Espinoza claimed he went to the job site to inspect the leaks but did not find any. De Avila then sent a written letter to Espinoza on November 29, asserting Espinoza had failed to complete the roofing work in a timely fashion and demanding it be completed no later than December 10, but not mentioning the HVAC issue. On December 1, Espinoza arrived at the job site to find all of his remaining material and work supplies missing. Believing the items had been stolen, Espinoza called the police and was in the process of filing a report when De Avila arrived. De Avila stated that he had removed all of Espinoza's materials and supplies from the job site. Sometime in late December, while working on the roof, De Avila ordered the Espinoza crew off of the job site. They did not return.
On January 4, 2012, De Avila finally responded to the change order, sending a copy of the order back to Espinoza with the line for the TPO boots at $50 per boot crossed out and noting the approved price for the change order as $4,550. In an undated response, Espinoza sent the change order back approving the new price but stating that unless a payment of $2,335-representing *154 about half of the additional cost-was received by January 6, no work would be completed. No response was given, and Espinoza did no further work on the project. De Avila hired a new subcontractor in mid-January to complete the roof installation.
Espinoza sued De Avila in March 2013, stating claims for breach of contract and quantum meruit, and seeking the outstanding balance due on the contract of $12,594.03 and attorney's fees. In a counter claim, De Avila sought damages for having to hire a subcontractor to complete the work. During the bench trial, Espinoza testified his company's roofing work was 95 percent complete when De Avila removed the supplies and building materials from the job site. Espinoza's brother, who had worked on the job with Espinoza, also testified at trial and stated they had completed between 95 and 98 percent of the work at the time De Avila forced them off the job site. De Avila in turn testified that he had been dissatisfied with Espinoza's job performance since October 2011, stating that Espinoza had been difficult to reach and had not been attending the weekly contractors' meetings with any regularity. He further testified that Espinoza had never repaired the leaks De Avila complained of in his November 22 email. The trial court found for Espinoza, awarding him $12,594.03 for his breach of contract claim and $10,500 in attorney's fees. This appeal followed.
DISCUSSION
In a single issue, De Avila claims the trial court erred in finding he was in breach of contract, claiming there was legally and factually insufficient evidence to support the finding. Specifically, De Avila asserts the evidence demonstrated Espinoza breached the contract first by refusing to complete the work provided for in the original agreement. Alternatively, he asserts he was free to terminate the contract at his convenience and therefore could not have been in breach of contract for removing Espinoza's materials or forcing his workers off the job site.
Legal Sufficiency of the Evidence
Standard of Review
When reviewing a claim that the evidence is legally insufficient to support a finding, we only consider the evidence and inferences that to tend support the finding and disregard all evidence and inferences to the contrary. City of Keller v. Wilson , 168 S.W.3d 802, 827 (Tex. 2005) ; Trammell v. Trammell , 485 S.W.3d 571, 575 (Tex.App.--Houston [1st Dist.] 2016, no pet.). Findings of fact entered in a bench trial have the same force and dignity as that of a jury's verdict upon questions. Hernandez v. Hernandez , 547 S.W.3d 898, 900 (Tex.App.--El Paso 2018, pet. denied). Anything more than a scintilla of evidence is legally sufficient to support the trial court's finding. Marathon Corp. v. Pitzner , 106 S.W.3d 724, 727 (Tex. 2003). We will sustain a no evidence issue only when: (1) the record discloses a complete absence of evidence of a vital fact; (2) the court is barred by rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact; (3) the evidence offered to prove a vital fact is no more than a scintilla; or (4) the evidence conclusively establishes the opposite of a vital fact. Marathon Corp. , 106 S.W.3d at 727. Ultimately, "[t]he final test for legal sufficiency must always be whether the evidence at trial would enable reasonable and fair-minded people to reach the verdict under review." City of Keller , 168 S.W.3d at 827.
Analysis
When a party to a valid and enforceable contract wrongfully interferes *155 with another party's ability to render its performance under the contract, and thereby makes that party's performance impossible, the party committing the interference is in breach of contract and the afflicted party is entitled to damages sustained by the breach. Tacon Mechanical Contractors, Inc. v. Grant Sheet Metal, Inc. , 889 S.W.2d 666, 670 (Tex.App.--Houston [14th Dist.] 1994, writ denied). The basic measure of damages for breach of contract resulting from wrongful interference with performance is to put the injured party in the same economic position it would have been in had the contract actually been performed. American Nat. Petroleum Co. v. Transcontinental Gas Pipe Line Corp. , 798 S.W.2d 274, 278 (Tex. 1990) ; Palla v. Bio-One, Inc. , 424 S.W.3d 722, 726 (Tex.App.--Dallas 2014, no pet.).
Here, the trial court found that De Avila's removal of the roofing materials and his eviction of Espinoza's crew from the job site was a breach of contract and that it occurred prior to any alleged breach by Espinoza. In his brief, De Avila lays out all of the evidence and testimony favorable to his position and largely ignores anything supporting the trial court's finding that he was in breach of contract. But in a legal sufficiency review, we are required to discount evidence unfavorable to the finding that could be discounted by a fact finder, such as self-serving testimony, and credit evidence that supports the contested finding. City of Keller , 168 S.W.3d at 827. Here, De Avila was required to show there was no evidence or no more than a scintilla of evidence to prove he breached the contract, or that the evidence presented conclusively established that he did not breach the contract. Marathon Corp. , 106 S.W.3d at 727. Espinoza testified that any delay on his part was due to the disagreement arising over the additional work necessitated by De Avila's decision to move the HVAC units from the inside of the building onto the roof. He stated he could not complete the project without installing the new materials because the manufacturer's warranty would be voided without them. He stated that during the work stoppage caused by the disagreement over the change order, De Avila removed Espinoza's remaining materials and supplies from the roof. The change orders themselves support his testimony that there was conflict over the additional work, as demonstrated by the crossed-out line for the TPO boots and the counter demand for an upfront payment before work resumed. He testified that the work was about 95 percent completed by the time they were forced off the job site. Espinoza's brother, Adolfo, stated they had completed between 95 and 98 percent of the work when they were told by De Avila to stop working and leave. Their testimony and the multiple change orders support a finding that the changes were necessary, that the parties did not agree on the price of the changes, and that De Avila acted to remove Espinoza from the job site before the work was completed. When a party to a valid and enforceable contract wrongfully makes another party's ability to render its performance impossible, the party committing the interference is in breach of contract and the afflicted party is entitled to damages sustained by the breach. Tacon Mechanical Contractors, Inc. , 889 S.W.2d at 670. As for De Avila's argument that he was entitled to terminate the contract at his convenience, the contract stated De Avila needed to provide forty-eight hours' notice in writing of his intent to terminate. No evidence was produced that this notice was given, and in fact De Avila argued the opposite: he maintained that he continued to request Espinoza complete the roofing installation right up until the point where he simply hired another subcontractor to do the job.
*156 Because more than a scintilla of evidence was provided to show De Avila wrongfully prevented Espinoza's performance under the contract, and that De Avila did not comply with the notice provision, the trial court's finding that De Avila was in breach of contract was supported by legally sufficient evidence. Marathon Corp. , 106 S.W.3d at 727.
Factual Sufficiency of the Evidence
Standard of Review
In reviewing a claim that the evidence is factually insufficient to support a finding, we must consider and weigh all of the evidence presented and will reverse only if the credible evidence supporting the finding is so weak, or so contrary to the overwhelming weight of all of the evidence, that the finding should be set aside and a new trial ordered. Crosstex N. Texas Pipeline, L.P. v. Gardiner , 505 S.W.3d 580, 615 (Tex. 2016) ; Burrus v. Reyes , 516 S.W.3d 170, 181 (Tex.App.--El Paso 2017, pet. denied). As noted, findings of fact in a bench trial have the same force and dignity as a jury's verdict upon questions and are reviewed by the same standards. Farrell v. Farrell , 459 S.W.3d 114, 118 (Tex.App.--El Paso 2015, no pet.). Accordingly, we may not reweigh the witnesses' credibility or substitute our judgment for that of the fact finder, even if the evidence would clearly support a different result. Burrus , 516 S.W.3d at 182 ; In Interest of J.R.P. , 526 S.W.3d 770, 777 (Tex.App.--Houston [14th Dist.] 2017, no pet.).
Analysis
In his testimony, De Avila maintained that he was not satisfied with Espinoza's progress, that Espinoza was hard to reach and did not attend the weekly contractor meetings on a regular basis, and that he failed to make the repairs requested in the November 22 email. He presented a certified letter sent to Espinoza dated November 29 detailing his concerns about Espinoza's lack of progress up to that point and demanding he complete the work by December 10. He testified Espinoza did not do any further work on the project after December 25, 2011. In his brief he also correctly points out that Espinoza admitted he did not complete the installation. He also asserts he could not have been in breach because the contract allowed him, at his election, to terminate the agreement with or without cause.
De Avila, however, does not address the unfavorable evidence presented. As noted above, Espinoza testified he could not complete the project until the parties reached agreement on the change order. De Avila himself agreed that moving the HVAC units to the roof was a significant change to the project. He also agreed that the original contract did not provide for installation of the HVAC units on the roof and that additional materials and work would be necessary as a result. The change orders show that while the initial order was sent to De Avila on October 25, no response in writing was sent by De Avila until January 4, and in that response Espinoza's proposed $50 per TPO boot was crossed out. The undated response from Espinoza agreed to the price change by De Avila but demanded an upfront payment of $2,335 before work commenced. De Avila testified he did not make that payment to Espinoza or agree to the upfront charge. Espinoza and his brother testified they had completed at least 95 percent of the roof installation when De Avila forced them off the project. Further, the contract itself did not provide for a completion date or other timetable despite stating that time was of the essence, a fact that De Avila acknowledged in his testimony. When viewing the entire picture of the evidence, instead of that cherry-picked by *157 De Avila, the credible evidence supporting the trial court's finding is substantial. De Avila has not shown, as he was required to do, that the evidence supporting the trial court's finding he breached the contract when he evicted Espinoza from the job site was contrary to the overwhelming weight of all of the evidence. Gardiner , 505 S.W.3d at 615. Additionally, as noted above, while the contract allowed De Avila to terminate the agreement with or without cause, it also required him to provide forty-eight hours' notice in writing of his intent to terminate. He did not argue or provide evidence that he gave that notice. Accordingly, the trial court's finding that he did not follow the termination provision that would allow him to discontinue the agreement was not contrary to the overwhelming weight of all of the evidence. Gardiner , 505 S.W.3d at 615. Thus, because the evidence at trial was both legally and factually sufficient to support the trial court's finding that De Avila was in breach of contract, his sole issue is overruled.
CONCLUSION
Having overruled De Avila's only issue on appeal, the judgment of the trial court is affirmed.
Hughes, J. (Not Participating)