**Affirmed and Memorandum Opinion filed December 3, 2020.**



In The

# Fourteenth Court of Appeals

---

### NO. 14-19-00144-CV

---

## ONYD, LLC, Appellant

## V.

## CHANDRA A. WILLIAMS, Appellee

---

**On Appeal from the 157th District Court
Harris County, Texas
Trial Court Cause No. 2016-43535**

---

## M E M O R A N D U M   O P I N I O N

Appellant Onyd, LLC and appellee Chandra A. Williams possessed competing deeds to the same piece of property. Onyd sued to quiet title to the property and Williams filed counterclaims seeking the same relief. After a bench trial, the trial court signed a final judgment in favor of Williams. For the reasons below, we affirm.

## BACKGROUND

This dispute involves conflicting ownership claims to a house located at 3811 Alsace Street in Houston, Texas (the "Property"). The Property was owned by Donna H. Richardson[1] and in 2004, she signed a warranty deed conveying the Property to Williams. The deed was not recorded in the real property records of Harris County.

On January 29, 2016, Richardson signed a second warranty deed conveying the Property to Onyd. The 2016 deed was recorded in the Harris County real property records on April 7, 2016. Approximately one month later, Williams recorded her 2004 deed from Richardson.

Onyd initiated the underlying proceeding in June 2016 and filed a "Motion for Judicial Review of Documentation or Instrument Purporting to Create a Claim on Real Property". In its motion, Onyd asserted that Williams's deed was an "invalid encumbrance" that should not be afforded any legal status. Onyd requested the trial court "enter an order striking [the 2004 deed] from the record as an invalid deed thereby allowing [Onyd] to enjoy title to the property."

In response, Williams asserted that Onyd had notice of her 2004 deed before its 2016 purchase of the Property. Based on this notice, Williams argued, Onyd could not claim superior title with respect to the Property even though Onyd's 2016 deed was recorded before Williams's deed. Williams also asserted counterclaims against Onyd, Richardson, Sellusyourhouse.com, Thomas Perry (the owner of Onyd), and Keval Patel (Onyd's attorney) for declaratory judgment, temporary injunction, fraud, trespass to try title, and to quiet title.

The parties proceeded to a bench trial in February 2019. At pre-trial

---

[1] In the trial transcript, Richardson also is referred to as Donna Haskett.

conference, counsel for Williams agreed to dismiss the claims against Sellusyourhouse.com, Perry, and Patel, and to proceed only against Onyd and Richardson. Williams's counsel also stated that Richardson had defaulted with respect to the claims asserted against her.[2] The parties agreed they were both proceeding on their claims for trespass to try title and to quiet title to the Property.

The trial court heard testimony from four witnesses: (1) Perry; (2) Williams; (3) Anthony Myers (Richardson's son); and (4) Betty Munks (the tenant residing at the Property when the 2016 deed was signed). In large part, the witnesses' testimony addressed Onyd's processes with respect to its purchase of the Property and Perry's knowledge regarding Williams's 2004 deed. Asserting that he had received limited information regarding adverse interests in the Property, Perry pointed out that Williams's 2004 deed was not shown in either the county records or in a title commitment. In contrast, Myers testified that Perry specifically knew Richardson previously had sold the Property to Williams.

After hearing evidence and the arguments of counsel, the trial court signed a final judgment in Williams's favor. The judgment states, in relevant part:

> IT IS ORDERED that the Deed of Trust granted to ONYD, LLC, filed in the real property records of Harris County, Texas . . . dated January 29, 2016 is invalid and of no force and effect.
>
> IT IS FURTHER ORDERED that the title to the following real property, located at 3811 Alsace, Houston, Texas . . . is quieted in Chandra A. Williams[.] . . . This being the same property conveyed by General Warranty Deed dated March 1, 2004 recorded under . . . the Property Records of Harris County, Texas on May 16, 2016.

The trial court also awarded Williams $3,130 in actual damages and attorney's

---

[2] The clerk's record does not contain a default judgment entered against Richardson. Richardson also is not a party to this appeal.

fees. The parties did not request findings of fact and conclusions of law. Onyd timely appealed.

ANALYSIS

On appeal, Onyd asserts the trial court erred by invaliding its 2016 deed and quieting title to the Property in Williams. Specifically, Onyd argues the trial court erred by impliedly finding that Onyd was not a bona fide purchaser of the Property as necessary to claim superior title.[3]

## I.      Standard of Review and Governing Law

Onyd relies on evidence presented at trial to support its contention that the trial court should have found in its favor. Construing Onyd's brief liberally, we interpret these complaints as legal and factual sufficiency challenges. *See Tello v. Bank One, N.A.*, 218 S.W.3d 109, 122 (Tex. App.—Houston [14th Dist.] 2007, no pet.) (acknowledging that courts of appeals must construe appellate briefs reasonably and liberally).

When, as here, the trial court does not enter findings of fact and conclusions of law to support its ruling after a bench trial, we infer all findings necessary to support the judgment. *See BMC Software Belg., N.V. v. Marchand*, 83 S.W.3d 789, 795 (Tex. 2002); *George Joseph Assets, LLC v. Chenevert*, 557 S.W.3d 755, 764 (Tex. App.—Houston [14th Dist.] 2018, pet. denied). The judgment of the trial court must be affirmed if it can be upheld on any legal theory that is supported

---

[3] On appeal, Onyd raises four separate contentions that address this issue: (1) in a contest over interests in property, the general rule is that the "first in time is the first in right"; (2) Onyd is a "bona fide purchaser for value and took all necessary steps to verify the veracity of the information provided"; (3) "despite having information of a potentially conflicting claim to title, [Onyd] is only obligated to verify the specific facts provided"; and (4) constructive notice does not apply to these circumstances. Because these arguments all address Onyd's status as a bona fide purchaser, we consider them together.

by the evidence. *Land v. Land*, 561 S.W.3d 624, 641 (Tex. App.—Houston [14th Dist.] 2018, pet. denied).

Because the appellate record includes both the reporter's and clerk's records, the trial court's implied findings are not conclusive and may be challenged for legal and factual sufficiency. *See BMC Software Belg., N.V.*, 83 S.W.3d at 795. For a legal sufficiency challenge, we analyze the challenged finding by applying the same standards used to review the evidence supporting a jury's finding. *Harris Cty. v. Ramirez*, 581 S.W.3d 423, 427 (Tex. App.—Houston [14th Dist.] 2019, no pet.) (citing *Catalina v. Blasdel*, 881 S.W.2d 295, 297 (Tex. 1994)). We view the evidence in the light most favorable to the challenged finding and indulge every reasonable inference that would support it. *City of Keller v. Wilson*, 168 S.W.3d 802, 822 (Tex. 2005). We credit favorable evidence if a reasonable factfinder could do so and disregard contrary evidence unless a reasonable factfinder could not do so. *Id*. at 827. A party attacking the legal sufficiency of an adverse finding on an issue for which the party had the burden of proof must demonstrate that the evidence conclusively establishes all vital facts in support of the issue. *Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 241 (Tex. 2001) (per curiam).

In reviewing factual sufficiency, we examine the entire record, considering both the evidence in favor of and contrary to the challenged finding. *2900 Smith, Ltd. v. Constellation NewEnergy, Inc.*, 301 S.W.3d 741, 746 (Tex. App.—Houston [14th Dist.] 2009, no pet.). When a party attacks the factual sufficiency of an adverse finding on which he had the burden of proof, the party must establish that the finding is against the great weight and preponderance of the evidence. *Burton v. Prince*, 577 S.W.3d 280, 285 (Tex. App.—Houston [14th Dist.] 2019, no pet.). But we may not pass judgment upon the witnesses' credibility or substitute our judgment for that of the factfinder, even if the evidence would support a different

result. *2900 Smith, Ltd.*, 301 S.W.3d at 746. If we determine the evidence is factually insufficient, we must detail the evidence relevant to the issue and state in what regard the contrary evidence greatly outweighs the evidence supporting the trial court's decision; we need not do so when affirming the judgment. *Id*.

The Texas Property Code provides for the recording of real property transfers and limits the validity of unrecorded instruments:

(a) A conveyance of real property or an interest in real property or a mortgage or deed of trust is void as to a creditor or subsequent purchaser for valuable consideration without notice unless the instrument has been acknowledged, sworn to, or proved and filed for record as required by law.

(b) The unrecorded instrument is binding . . . on a subsequent purchaser who does not pay a valuable consideration or who has notice of the instrument.

Tex. Prop. Code Ann. § 13.001(a), (b). As this section provides, an unrecorded conveyance is binding on those who have knowledge of the conveyance. *See id*.; *see also Hue Nguyen v. Chapa*, 305 S.W.3d 316, 323 (Tex. App.—Houston [14th Dist.] 2009, pet. denied).

But a person who acquires real property in good faith, for value, and without notice of any third-party claim or interest is a bona fide purchaser. *Madison v. Gordon*, 39 S.W.3d 604, 606 (Tex. 2001) (per curiam); *Hue Nguyen*, 305 S.W.3d at 323. Status as a bona fide purchaser is an affirmative defense to a title dispute. *Madison*, 39 S.W.3d at 606.

Notice will defeat the protection afforded to a bona fide purchaser. *See id*. Broadly defined as "information concerning a fact actually communicated to a person, derived by him from a proper source, or presumed by law to have been acquired", notice can be either actual or constructive. *Hue Nguyen*, 305 S.W.3d at 323 (citing *Madison*, 39 S.W.3d at 606; *Flack v. First Nat'l Bank of Dalhart*, 226

6

S.W.2d 628, 631 (Tex. 1950)). A subsequent purchaser has actual notice if he has personal information or express knowledge of an adverse right. *Madison*, 39 S.W.3d at 606; *Hue Nguyen*, 305 S.W.3d at 323. Under certain circumstances, constructive notice may be imputed to a person not having personal information or knowledge. *Madison*, 39 S.W.3d at 606; *Hue Nguyen*, 305 S.W.3d at 324. Generally, the issue of whether a party has notice is a question of fact; it becomes a question of law "only when there is no room for ordinary minds to differ as to the proper conclusion to be drawn from the evidence." *Hue Nguyen*, 305 S.W.3d at 323 (citing *O'Ferral v. Coolidge*, 228 S.W.2d 146, 148 (Tex. 1950)).

## II.    Evidence

In the underlying trial, the only disputed issue was the fact question of whether Onyd (through Perry) bought the Property with knowledge of Williams's competing interest. By rendering judgment in favor of Williams, the trial court necessarily found that Onyd had notice of Williams's ownership interest and thus was not entitled to judgment on its affirmative defense of bona fide purchaser. *See, e.g., Grayco Town Lake Inv. 2007 LP v. Coinmach Corp.*, No. 03-15-00088-CV, 2016 WL 7335862, at *2 (Tex. App.—Austin Dec. 16, 2016, no pet.) (mem. op.). Before we address Onyd's challenge to this implied finding, we discuss in detail the testimony and evidence presented at trial.

Perry was the first witness to testify and identified himself as Onyd's owner. Perry said he is in the business of "buy[ing], fix[ing], and flip[ping] real estate". Explaining that Onyd typically targets properties that are behind in taxes or have "some kind of distress on the title", Perry said he identified the Property as a potential purchase because it was delinquent in paying its property taxes. After researching the Harris County clerk's office records and the records held by the Harris County Appraisal District, Perry stated he determined the Property was

owned by Richardson.

Perry testified that he made Richardson an offer to purchase the Property for $1,500. Perry said his offer price took into account the taxes owed on the Property as well as the Property's condition, which he said "need[ed] a lot of work." Perry did not physically visit the Property before offering to purchase it.

Richardson accepted the offer and, on January 29, 2016, came to Onyd's office with her son, Myers, to sign the warranty deed. Perry said the check for the Property was mailed to Myers on March 29, 2016. The deed was recorded in the Harris County property records on April 7, 2016.

Perry testified that, when he purchased the Property, he "wasn't aware that anybody owned the property other than Ms. Donna Haskett Richardson." Perry said he found out about Williams's competing interest when he made his first visit to the Property approximately two weeks after completing the sale. Perry met with Munks, the Property's tenant, who informed him that mail had been coming to the Property addressed to Richardson. According to Perry, Munks said she had been paying rent to Williams but "doubted that Ms. Williams had actually owned the property, since all the tax notices were coming to the property with [Richardson's] name on it."

On cross-examination, Perry was asked whether, in his telephone conservations with Richardson prior to the Property's sale, she told him "that she had sold this property years ago?" In response, Perry said:

> So again, what we always go by is the county clerk's records. [Richardson] may have said that she had sold the property, but we hear lots and lots of things that we don't typically take into consideration outside the clerk's records.

When asked whether Richardson had specifically told him that she "had sold that

property to Ms. Williams some 12 years before", Perry said:

> I don't recall the details, but I have read her testimony. And what I recall is that she told me that she had sold it to a Hispanic lady, not to a Ms. Williams.

When asked if he tried to "confirm" Richardson's statement that she previously had sold the Property, Perry said he was "going based on who is in the county clerk's record as the owner of the property." According to Perry, he "checked every record that [he] could" and "determined that [Richardson] was the title owner".

Williams was the second witness to testify at trial. According to Williams, Richardson sold her the Property in 2004 because Richardson was "getting ready to lose the property from taxes." Williams said she paid approximately $13,000 towards the delinquent taxes and entered into an installment agreement for the remainder. Williams said she never planned on selling the Property because it was located next door to her mother's house.

Williams testified that she first had contact with Perry in May or June 2016, after Onyd purchased the Property. According to Williams, she filed her 2004 deed in the county property records after she "discovered that there was someone else alleging to be the owner." Williams said she "never knew anything about a deed being filed or first to file, anything like that, until [she] talked to Mr. Perry." Williams said she did not previously record the 2004 deed because she "never had plans on selling" the Property.

The third witness to testify was Myers, Richardson's son. Myers said Richardson had been having medical issues "for a while" and that he took "care of most of her business." Myers provided the following description of his and Richardson's initial conversations with Perry regarding the sale of the Property:

[Perry] started with my mom, threatening her, illegal activities going on at Alsace. ["]I know it's in your name and I know you sold the property already. You know, that's illegal if you sell a property twice.["] All kind of legal stuff, just — and she called me telling me, you know, he was, you know, threatening her and telling her, "You need this $500. Give me that property."

So she called me crying, upset; and that raised me up to call him.

So when I started talking to him, he start saying the same things. ["]You know, I'm going to send legal people over there. I know people. I know illegal stuff going on there. Your momma going to jail.["]

And so I had to calm down and I called him back and I asked him, I said, "Are you really going to send a lady to jail over a piece of property?"

And he said he's going to do whatever he had to do.

According to Myers, Perry knew that Richardson previously had sold the Property to Williams. Myers said that, when he and Perry were "going back and forth," Perry said: "I know the property — your mom sold the property already. That's illegal. . . . she sold it to a Ms. Williams."

Munks was the final witness to testify. Munks said Perry came by the Property in May 2016 and "let [her] know he was the new owner of the home." Munks told Perry she was renting the home from Williams, but Perry told Munks he purchased the Property from Richardson. Munks said she was "confused" and told Perry she did not know anything about Richardson, but only knew Williams. According to Munks, she showed Perry a letter addressed to Richardson that had been delivered to the Property.

## III.     Application

After reviewing the record, we conclude legally and factually sufficient evidence supports the trial court's implied finding that Onyd (through Perry) had

10

actual notice of Williams's competing interest in the Property, thereby precluding Onyd's reliance on the bona fide purchaser defense.

The evidence relevant to this inquiry may be distilled to two competing versions of events regarding what Perry knew before he purchased the Property. According to Perry, he "wasn't aware that anybody owned the property other than" Richardson but recalled Richardson telling him that she "had sold [the Property] to a Hispanic lady". According to Myers, Perry told him in phone conversations prior to the purchase of the Property that Perry knew Richardson previously had sold the Property to Williams.

Our legal sufficiency review examines the evidence in the light most favorable to the challenged finding. *See City of Keller*, 168 S.W.3d at 822. Applying this standard, we disregard contrary evidence unless the factfinder could not do so. *See id*. at 827. Falling within this characterization is Perry's self-serving testimony regarding what he knew (or, more specifically, did not know) before the purchase of the Property. *See, e.g., De Avila v. Espinoza Metal Bldg. & Roofing Contractors*, 564 S.W.3d 150, 155 (Tex. App.—El Paso 2018, no pet.) (in a legal sufficiency review, the court may discount self-serving testimony); *Gurka v. Gurka*, 402 S.W.3d 341, 349 (Tex. App.—Houston [14th Dist.] 2013, no pet.) (same).

After disregarding Perry's testimony on this point, the only remaining evidence is Myers's testimony that Perry knew Richardson previously had sold the Property to Williams. Viewing this testimony in a light favorable to the challenged finding, it is sufficient to support the trial court's implied finding that Onyd (through Perry) had notice of Williams's competing interest in the Property. *See City of Keller*, 168 S.W.3d at 822, 827. Specifically, this testimony shows that Perry had personal information or express knowledge of Williams's adverse

ownership right. *See Madison*, 39 S.W.3d at 606; *Hue Nguyen*, 305 S.W.3d at 323; *see also, e.g., Fletcher v. Minton*, 217 S.W.3d 755, 759-60 (Tex. App.—Dallas 2007, no pet.) (legally sufficient evidence supported finding that the appellant had actual notice of a conflicting claim to the property where evidence showed that, before the purchase, the appellant's agent was specifically told that another person owned the property).

For our factual sufficiency review, we examine the entire record and consider the evidence in favor of and contrary to the challenged finding. *See 2900 Smith, Ltd.*, 301 S.W.3d at 746. But we refrain from judging the credibility of the witnesses or reweighing the relevant evidence. *See id*. Applying these standards, we cannot conclude it was against the great weight and preponderance of the evidence for the trial court to credit Myers's testimony and discount Perry's regarding what Perry knew before the Property was purchased. Resolution of this conflict hinges on an evaluation of the witnesses' credibility — an issue that was solely within the trial court's province as factfinder. *See id*. We decline to second-guess this determination on appeal.

We conclude the trial court's implied finding that Onyd (through Perry) had actual notice of Williams's interest in the Property is supported by legally and factually sufficient evidence. Therefore, the trial court did not err by concluding Onyd was not entitled to judgment on its affirmative defense of bona fide purchaser. We overrule Onyd's issues.

## CONCLUSION

We affirm the trial court's February 12, 2019 final judgment.


/s/     Meagan Hassan
        Justice


Panel consists of Justices Bourliot, Hassan, and Poissant.