**Appellant's Motion for Expedited Reversal Denied as Moot, Reversed and Remanded, and Memorandum Opinion filed June 4, 2024.**



**In The**

# Fourteenth Court of Appeals

---

### NO. 14-22-00910-CV

---

### U.S. BANK NATIONAL ASSOCIATION AS LEGAL TITLE TRUSTEE FOR TRUMAN 2016 SC6 TITLE TRUST, Appellant

### V.

### GARSON B. SILVERS, ZEONS, INC., ATHAS CAPITAL GROUP, INC., RAMA FUND, LLC, WHITE GLASS LENDING, LLC, AMF HOLDINGS, LLC, AND SEABROOK CAPITAL LLC, Appellees

---

**On Appeal from the 157th District Court
Harris County, Texas
Trial Court Cause No. 2019-34346**

---

## M E M O R A N D U M   O P I N I O N

In this lien priority case, an earlier lienholder challenges an adverse summary judgment declaring that a subsequent lienholder has priority. In two issues, the earlier lienholder contends that the trial court erred in concluding that: (1) the subsequent lienholder is a bona fide mortgagee; and (2) the expunction of a notice

of lis pendens entitled the subsequent lienholder to encumber the property at issue with a superior lien free and clear of the earlier lienholder's claims. In a third issue, the earlier lienholder contends the trial court's judgment, though final, is erroneous because it grants summary judgment to parties who did not seek that relief.[1]

After a thorough review of the record, we agree with the earlier lienholder that the judgment granted more relief than requested and is reversible for that reason. We further hold that it was error to grant summary judgment on the grounds presented in the subsequent lienholder's motion because: (1) fact issues preclude summary judgment on the subsequent lienholder's bona fide mortgagee status; and (2) the lis pendens expunction occurring *after* the subsequent lienholder took its lien did not permit the property at issue to be encumbered by the subsequent lien in a position superior to the earlier lienholder's lien. Accordingly, we reverse and remand for proceedings consistent with this opinion.

## Background

This appeal concerns various liens against and transfers of real property located at 1001 Usener Street in Houston (the "Property"). The relevant history of loans, liens, and other recordings began in April 2005. Garson B. Silvers and his wife borrowed $412,000 from Long Beach Mortgage Company ("LBMC"), the repayment of which was secured by a security instrument and recorded in the Harris County property records (the "2005 SI"). The Silvers renewed and extended the 2005 SI in January 2007, providing a promissory note in the original sum of $407,297.88, which was secured by a deed of trust in favor of Bank of America. These documents were recorded in the property records (the "2007 DOT").

---

[1] We deny as moot appellant U.S. Bank's "Motion for Expedited Reversal of Erroneous Final Judgment and Remand."

2

Bank of America assigned the 2007 DOT to the original plaintiff in this case, Christiana Trust, which, during the pendency of this suit, assigned it to appellant U.S. Bank National Association ("U.S. Bank"). These assignments were recorded in the real property records.

Silvers's wife died in November 2008, and no probate matter was opened. Silvers, as his wife's sole heir at law, acquired all her estate, including her interest in the Property subject to the 2007 DOT. According to U.S. Bank, the loan securing the 2007 DOT is in default, and the Silvers were properly notified of the default. When the default was not cured, the balance of the loan was accelerated. U.S. Bank claims that, after the loan was in default, Silvers sought out the services of an individual named Patrick Soria "to assist in stripping the Deed of Trust lien" from the Property through a series of transactions involving new loans, liens, and conveyances to other entities.

According to U.S. Bank, in April 2017, Soria or his associates, through one of Soria's alter-ego companies, West H&A LLC, recorded a deed of trust encumbering the Property (the "2017 SI"). This document mimicked the 2005 SI, but it purported to designate a company named Warranted Effectuation of Substitute Transferee, Inc. ("WEST") as the nominated trustee and substitute trustee for LBMC and "master trustee" of the 2017 SI. Silvers executed the 2017 SI, which was notarized. Then, in June 2017, Soria or his associates, through West H&A, recorded an assignment deed of trust (the "2017 Assignment") that purported to assign the 2005 SI and 2007 DOT to West H&A. The 2017 Assignment was executed by an individual named Michael Jackson, as a member of WEST, "nominated Substitute Trustee for [LBMC], its successors and assigns." The assignment was also executed by an individual named Ryan Urquizu, also as a member of West H&A. Only Urquizu's signature is notarized.

3

Meanwhile in June 2017, Soria or his associates, again through West H&A, recorded a "Deed of Reconveyance" (the "2017 Reconveyance"), which purported to convey the 2005 SI and the 2007 DOT lien interests to "the person or persons legally entitled thereto." This instrument was executed by Jackson in the same capacity as the 2017 Assignment, and Jackson's signature is notarized. Soria or his associates, through West H&A, also recorded a "Substitution of Trustee" (the "2017 Substitution"), which purported to substitute WEST as the trustee of the 2005 SI and the 2007 DOT. This instrument was executed by Soria as a member of West H&A, and his signature is notarized.

Then, in 2018, Soria or his associates, through WEST, recorded a series of lien releases: (1) a January 2018 release of lien, which indicated that the 2017 SI was a modification of the 2005 SI and 2007 DOT and purported to release all three instruments; (2) a February 2018 release of lien, which purported to release the 2005 SI and "all liens carried forward and extended by the Deed of Trust"; (3) another February 2018 release of lien, which purported to release the 2017 SI and "all liens carried forward and extended by the Deed of Trust"; and (4) another February 2018 release of lien, which purported to release the 2007 DOT and "all liens carried forward and extended by the Deed of Trust." Soria executed the first three releases as a member of WEST, the purported trustee-in-fact for LBMC, and he executed the fourth lien release as a member of WEST as purported substitute trustee-in-fact for Christiana Trust. Soria's signature on all four releases is notarized. We refer to these releases collectively as the "2018 Releases."

Later in February 2018, Silvers borrowed $422,500 from Athas Capital Group, Inc., secured by a deed of trust recorded in the property records, which was subsequently assigned to RAMA Fund, LLC, likewise recorded in the property

4

records.  RAMA later filed a satisfaction of deed of trust in September 2018 that released the 2018 Athas deed of trust.

In July 2018, Silvers, allegedly working in concert with Soria or his associates, executed a warranty deed granting his interest in the Property to Zeons, Inc.  This deed was recorded in the property records that month.  Zeons entered into a loan agreement with White Glass Lending, LLC, pursuant to which Zeons borrowed $590,000, secured by a deed of trust on the Property, recorded in the property records.  White Glass assigned the deed of trust to AMF Holdings, LLC, and the assignment is recorded in the property records.  In February 2019, Zeons borrowed $750,000 from appellee Seabrook Capital, LLC, which was secured by a deed of trust (the "Seabrook DOT").  The proceeds from this loan were used to pay off the White Glass loan, and AMF recorded a release of lien in the property records in August 2019.

While these activities were ongoing in Texas, an independent fraud lawsuit against Soria was begun in California federal court.  In April 2018, Nationstar Mortgage LLC filed suit against Soria and numerous other defendants in the United States District Court for the Central District of California, Western Division (the "California Lawsuit").  In its complaint, Nationstar detailed a wide-ranging fraudulent scheme spearheaded by Soria to strip lienholders of their interests in real property.  The trial court appointed a temporary receiver, who subsequently became a permanent receiver, to act on Soria's behalf and unwind the allegedly fraudulent transactions by Soria and related entities, including transactions concerning the Property.  On April 15, 2019, the California district court issued an order declaring (1) the 2017 SI, (2) the 2017 Assignment, (3) the 2017 Reconveyance, and (4) the 2018 Releases, all cancelled and void *ab initio*.  This order was recorded in the Harris County real property records in April 2019.

Separately, U.S. Bank filed a motion in Harris County District Court pursuant to Government Code section 51.903, which authorizes a person who owns or has an interest in real property and who has reason to believe that an instrument purporting to create a lien against the real property is fraudulent to file a motion for a judicial determination that the cited instrument is fraudulent. *See* Tex. Gov't Code § 51.903. U.S. Bank sought an order finding that the 2017 SI and the 2017 Reconveyance were fraudulent. On August 17, 2018, the trial court signed an order finding that the 2017 SI and the 2017 Reconveyance were not created with the express or implied consent of the owner or the owner's agent, fiduciary, or representative (the "Judicial Finding"). This document expressly identified the 2017 SI and the 2017 Reconveyance by their recorded filing numbers, and it was recorded in the real property records on August 24, 2018.

U.S. Bank's predecessor, Christiana Trust, filed suit against: (1) Seabrook Capital; (2) Garson B. Silvers and Zeons, as the Property owners;[2] and (3) Athas, RAMA, White Glass, and AMF, as either purported lienholders on the Property or assignees of purported liens.[3] After Christiana Trust assigned its interest in the Property to U.S. Bank, U.S Bank was substituted as the plaintiff. U.S. Bank sought: (1) a declaration that it has a security interest in the Property superior to that of any other lienholders; (2) foreclosure on the Property; and (3) attorney's fees. U.S. Bank also filed a notice of lis pendens in the Harris County real property records.

Seabrook's answer included the affirmative defense that it was a bona fide lender. Seabrook counterclaimed for a competing declaration that its deed of trust lien is valid and superior to U.S. Bank's lien and damages for fraud against Silvers

---

[2] Silvers and his wife originally owned the Property, but in 2018 Silvers transferred it to Zeons, a corporation for which Silvers is the president, secretary, treasurer, and director.

[3] Seabrook is the only defendant who filed an appellee's brief in this appeal.

6

and Zeons. Silvers and Zeons did not answer, but they appeared in the lawsuit by filing a motion to expunge the lis pendens. After a hearing, the trial court granted their motion and expunged the lis pendens. White Glass and AMF initially answered with a general denial, but later amended their joint answer to raise the affirmative defense that neither had a justiciable interest in the Property because they had released their lien. Nothing in our record indicates that Athas or RAMA answered or appeared in the lawsuit.

U.S. Bank filed a traditional and no-evidence summary-judgment motion, seeking: (1) to foreclose on its lien; (2) a declaratory judgment that none of the defendants are bona fide mortgagees; (3) a declaratory judgment that Seabrook's requested declaration that its lien is superior to U.S. Bank's fails as a matter of law or that there is no evidence to support Seabrook's declaratory-judgment claim; and (4) attorney's fees from Silvers pursuant to the terms of U.S. Bank's loan agreement.

Seabrook filed two summary-judgment motions. The first motion sought a declaration that the order expunging the lis pendens allowed the Property to be encumbered by Seabrook's lien "in a position superior to and free and clear of any prior lien claims" by U.S. Bank. In its second motion, Seabrook sought summary judgment on its affirmative defense that it was a bona fide lender.

Although our record does not contain a motion for summary judgment filed by either White Glass or AMF, the trial court signed an amended summary judgment order on March 29, 2021 in favor of these defendants. The trial court ordered that U.S. Bank's summary-judgment motion "against [White Glass and AMF] is denied, and that [U.S. Bank] take nothing against [White Glass and AMF] and that [White Glass and AMF] have no liability to [U.S. Bank] or any other party in this cause."

Meanwhile, discovery disputes, the COVID-19 pandemic, and bankruptcy proceedings instituted by Silvers caused several delays in proceedings. U.S. Bank

filed a second amended motion for summary judgment, and the court heard Seabrook's and U.S. Bank's three motions for summary judgment in September 2022. On October 5, 2022, the trial court signed two summary judgment orders in Seabrook's favor. The first granted Seabrook summary judgment on its declaratory-judgment claim, and the second granted Seabrook summary judgment on its affirmative defense of bona fide mortgagee status. The second order is entitled "Final Order Granting [Seabrook]'s Second Motion for Summary Judgment," and states unequivocally that it is a final judgment disposing of all parties and issues and is appealable.

U.S. Bank timely filed a motion for new trial, which the trial court overruled on December 2, and timely noticed its appeal on December 9.[4]

## Analysis

U.S. Bank challenges the summary judgment orders in Seabrook's favor for three reasons. First, U.S. Bank claims the trial court erroneously ruled as a matter of law that Seabrook is a bona fide lender. Second, U.S. Bank argues the judgment is error because the notice of lis pendens and later order expunging it are irrelevant to the bona fide lender analysis. Finally, U.S. Bank urges us to reverse the judgment because it erroneously disposed of parties and claims that were not addressed in any summary judgment motion.

---

[4] Also on December 9, U.S. Bank filed an untimely motion to amend the final judgment to delete the finality language. Then, on December 12, U.S. Bank filed an untimely motion for default judgment against Silvers, Athas Capital, and RAMA Fund. The trial court took no action on these untimely motions.

8

**Judgment Grants More Relief Than Requested**

We address U.S. Bank's third issue first. U.S. Bank asserts that the judgment, though final, must be reversed and remanded at a minimum because it erroneously disposed of claims against parties who did not seek summary judgment. We agree.[5]

"The purpose of a summary judgment is to 'provide a method of summarily terminating a case when it clearly appears that only a question of law is involved and that there is no genuine issue of fact.'" *G & H Towing Co. v. Magee*, 347 S.W.3d 293, 296-97 (Tex. 2011) (quoting *Gaines v. Hamman*, 358 S.W.2d 557, 563 (1962)). However, summary judgments may only be granted upon grounds expressly asserted in the summary judgment motion. *Id.* at 297; *see also McConnell v. Southside Indep. Sch. Dist.*, 858 S.W.2d 337, 341 (Tex. 1993) (holding that summary judgment motion under Rule 166a(c) itself must contain ground upon which it is made; reliance may not be placed on briefs or summary judgment evidence). Further, a trial court may not grant summary judgment in favor of a party that does not properly move for it. *Teer v. Duddlesten*, 664 S.W.2d 702, 703 (Tex. 1984); *Sw. Invs. Diversified, Inc. v. Estate of Mieszkuc,* 171 S.W.3d 461, 468 n.15 (Tex. App.—Houston [14th Dist.] 2005, no pet.). "When a trial court grants more relief than

---

[5] The summary judgment orders constitute a final and appealable judgment because the October 5, 2022 order granting Seabrook's second motion for summary judgment contains language clearly and unequivocally disposing of all claims of all parties. *See Lehmann v. Har-Con Corp.*, 39 S.W.3d 191, 205 (Tex. 2001). The interlocutory summary judgment orders were made appealable once the trial court signed an order that finally disposed of all parties and claims. We have jurisdiction to review the trial court's interlocutory summary judgment orders because "[w]hen a trial court renders a final judgment, the court's interlocutory orders merge into the judgment and may be challenged by appealing that judgment." *Bonsmara Nat. Beef Co., LLC v. Hart of Tex. Cattle Feeders, LLC*, 603 S.W.3d 385, 390 (Tex. 2020); *see also Teer v. Duddlesten*, 664 S.W.2d 702, 704 (Tex. 1984) ("In the absence of an order of severance, a party against whom an interlocutory summary judgment has been rendered will have his right of appeal when and not before the same is merged in a final judgment disposing of the whole case.").

requested and, therefore, makes an otherwise partial summary judgment final, that judgment, although erroneous, is final and appealable." *Magee*, 347 S.W.3d at 298.

The trial court denied U.S. Bank's summary judgment motion as to its affirmative claims against AMF and White Glass. By denying U.S. Bank's summary-judgment motion, the trial court necessarily concluded that it could not grant U.S. Bank affirmative relief on its claims against AMF and White Glass absent a trial, at least for the reasons presented in U.S. Bank's motion. The trial court's order, however, went further than simply denying U.S. Bank's motion; it dismissed U.S. Bank's claims against AMF and White Glass altogether. The trial court ordered that U.S. Bank take nothing against White Glass and AMF and that neither White Glass nor AMF have any liability to U.S. Bank or any other party in the case. Effectively, therefore, the trial court granted a summary judgment in AMF's and White Glass's favor against U.S. Bank's affirmative claims.

"A trial court cannot grant summary judgment for a party that has not moved for it." *LaGoye v. Victoria Wood Condominium Ass'n*, 112 S.W.3d 777, 784 (Tex. App.—Houston [14th Dist.] 2003, no pet.); *see also Teer*, 664 S.W.2d at 703; *Sweet Water Well Serv. LLC v. W. Houston Airport Corp.*, No. 14-18-00596-CV, 2020 WL 5048356, at *3 (Tex. App.—Houston [14th Dist.] Aug. 27, 2020, no pet.) (mem. op.). Neither AMF nor White Glass moved for summary judgment. Thus, the trial court erred by granting a take-nothing judgment in favor of AMF and White Glass when they did not move for that relief. *See Young v. Hodde*, 682 S.W.2d 236, 237 (Tex. 1984) (per curiam) (agreeing with court of appeals that "trial court erred in rendering the take-nothing judgment against Hodde's counterclaim in the absence of a motion for summary judgment by Young seeking that relief"); *Teer*, 664 S.W.2d at 703.

Additionally, other than the finality language contained in the October 5, 2022 judgment, there is nothing in our record disposing of U.S. Bank's claims against Silvers or Zeons. These parties were not non-suited or severed from the case, nor did they file summary-judgment motions. Accordingly, the trial court erred by disposing of U.S. Bank's claims against these defendants when they did not seek that relief. *Teer*, 664 S.W.2d at 703; *LaGoye*, 112 S.W.3d at 784.[6]

Finally, we note that the trial court did not declare U.S. Bank's lien invalid. Rather, the court declared that Seabrook's lien is superior to, and free and clear of, any prior lien claims by U.S. Bank and that U.S. Bank take nothing as to its claims against Seabrook. U.S. Bank asserted claims against parties other than Seabrook based on the validity of U.S. Bank's lien, such as claims against AMF and White Glass. The trial court dismissed these claims even though no party sought dismissal and no party sought to prove that U.S. Bank's lien was invalid. Thus, (1) U.S. Bank's claims concerning its lien priority against AMF and White Glass, (2) U.S. Bank's foreclosure request against Silvers or Zeons, and (3) U.S. Bank's request for attorney's fees pursuant to its loan agreement with Silvers, were erroneously disposed of without having been raised by the summary-judgment motions.

In sum, we agree with U.S. Bank that the trial court erroneously disposed of its claims against Silvers, Zeons, AMF, and White Glass, when none of them sought

---

[6] Our record does not reflect that either Athas Capital or RAMA Fund were served or appeared. U.S. Bank does not contend that the trial court erroneously disposed of its claims as to these non-appearing defendants. Thus, U.S. Bank has abandoned its claims as to them. *See M.O. Dental Lab v. Rape*, 139 S.W.3d 671, 674 (Tex. 2004) (judgment final if remaining defendants were never served with citation and did not answer, and nothing in the record indicates the plaintiff expected to obtain service); *Youngstown Sheet & Tube Co. v. Penn*, 363 S.W.2d 230, 232 (Tex. 1962) (explaining that, where party was not served, did not answer, and nothing in the record indicated that petitioner expected to obtain service, "the case stands as if there had been a discontinuance as to [the non-answering party]").

summary judgment on U.S. Bank's claims.[7] *See Teer*, 664 S.W.3d at 703; *LaGoye*, 112 S.W.3d at 784; *cf. also Zarzana v. Ashley*, 218 S.W.3d 152, 161 (Tex. App.— Houston [14th Dist.] 2007, pet. struck).

Accordingly, we sustain U.S. Bank's third issue. When a summary judgment erroneously grants more relief than requested, however, we do not automatically reverse the judgment in its entirety. Rather, in the interest of judicial economy, we consider whether the trial court properly granted the relief that was requested in the motion or motions. *See Magee*, 347 S.W.3d at 298; *Bandera Elec. Coop., Inc. v. Gilchrist*, 946 S.W.2d 336 (Tex. 1997) (per curiam). If so, the remedy is to affirm the summary judgment in part, reverse it in part given that only a partial summary judgment should have been granted, and remand the case to the trial court for further proceedings. *Bandera Elec. Coop.*, 946 S.W.2d at 336. Accordingly, we turn to whether the trial court properly granted Seabrook the relief it requested in its summary-judgment motions.

**Bona Fide Lender**

In its first issue, U.S. Bank challenges the trial court's ruling granting Seabrook's motion for summary judgment that it is a bona fide mortgagee as a matter of law.

The parties filed cross-motions for summary judgment on Seabrook's status as a bona fide mortgagee. We review a trial court's ruling on summary-judgment motions de novo. *Rosetta Res. Operating, LP v. Martin*, 645 S.W.3d 212, 218 (Tex.

---

[7] A junior lienholder may foreclose on property, but a foreclosure does not terminate a senior interest in the foreclosed real estate. *See, e.g.*, *Kenneth D. Eichner, P.C. v. Dominguez*, No. 14-18-00399-CV, 2022 WL 364070, at *5 (Tex. App.—Houston [14th Dist.] Feb. 8, 2022, pet. denied) (mem. op.) (stating that foreclosure does not terminate interests in the foreclosed real estate that are senior to the mortgage being foreclosed); *Atu v. Slaughter*, No. 14-06-00771-CV, 2007 WL 2682198, at *3-4 (Tex. App.—Houston [14th Dist.] Sept. 13, 2007, no pet.) (mem. op.) (same).

2022). "On cross-motions for summary judgment, each party bears the burden of establishing that it is entitled to judgment as a matter of law." *Miles v. Tex. Cent. R.R. & Infrastructure, Inc.*, 647 S.W.3d 613, 619 (Tex. 2022). When parties file competing summary-judgment motions on the same issue and the trial court grants one motion and denies the other, we consider the summary-judgment evidence presented by both sides, determine all questions presented, and if we determine that the trial court erred, render the judgment the trial court should have rendered. *Id.*; *see Tarr v. Timberwood Park Owners Ass'n, Inc.*, 556 S.W.3d 274, 278 (Tex. 2018); *Argonaut Ins. Co. v. Baker*, 87 S.W.3d 526, 529 (Tex. 2002); *Texan Land & Cattle II, Ltd. v. ExxonMobil Pipeline Co.*, 579 S.W.3d 540, 542 (Tex. App.—Houston [14th Dist.] 2019, no pet.).

A bona fide lender or mortgagee acquires its interest in the property in good faith, for value, and without notice of the claim or interest of a third party. *Houston First Am. Sav. v. Musick*, 650 S.W.2d 764, 769 (Tex. 1983); *LendingHome Funding Corp. v. Tuesday Real Estate, LLC*, No. 05-20-00071-CV, 2021 WL 6124319, at *8 (Tex. App.—Dallas Dec. 28, 2021, no pet.) (mem. op.). A bona fide mortgagee is typically entitled to the same protections as a bona fide purchaser. *Noble Mortg. & Invs., LLC v. D & M Vision Invs., LLC*, 340 S.W.3d 65, 76 (Tex. App.—Houston [1st Dist.] 2011, no pet.) (citing *Graves v. Guar. Bond State Bank*, 161 S.W.2d 118, 120 (Tex. App.—Texarkana 1942, no writ)). Status as a bona fide purchaser or lender is generally an affirmative defense, which means that the party claiming bona fide lender status bears the burden to establish it. *See id.*; *cf. Madison v. Gordon*, 39 S.W.3d 604, 606 (Tex. 2001) ("Status as a bona fide purchaser is an affirmative defense to a title dispute."). A defendant seeking summary judgment on an affirmative defense must conclusively establish each element of the defense. Tex. R. Civ. P. 166a(b), (c); *Centeq Realty, Inc. v. Siegler*, 899 S.W.2d 195, 197 (Tex.

13

1995). If the movant produces sufficient summary-judgment evidence to establish its right to summary judgment, the burden shifts to the nonmovant to raise a genuine issue of material fact precluding summary judgment. *Centeq Realty*, 899 S.W.2d at 197.

**A. Seabrook produced summary-judgment proof supporting its bona fide mortgagee defense.**

In its second summary-judgment motion, Seabrook identified the following documents as the "essential links" in its chain of title:

1. 2017 SI
2. 2017 Assignment
3. 2017 Reconveyance
4. 2018 Releases
5. Athas deed of trust
6. Athas deed of trust assignment
7. Zeons deed
8. White Glass deed of trust
9. White Glass deed of trust assignment
10. Seabrook deed of trust

Facially, these documents indicate that U.S. Bank's lien was released and that the Property was transferred to Zeons to whom Seabrook made its loan and through whom Seabrook acquired its interest in the Property. Seabrook presented summary-judgment proof that it had no notice of U.S. Bank's claim or interest in the Property and qualified as a bona fide mortgagee. Thus, the burden shifted to U.S. Bank to either conclusively prove that Seabrook had notice of its interest in the Property or to raise a genuine issue of material fact precluding summary judgment. *See id.* U.S. Bank urges that the trial court erred for three reasons: (1) the instruments recorded by West H&A and Soria are forgeries that are void *ab initio* and thus cannot support Seabrook's bona fide mortgagee defense as a matter of law; (2) Seabrook had constructive notice of fraud; and (3) Seabrook had actual notice of fraud through its escrow agent.

14

**B.** **U.S. Bank did not conclusively establish that the Soria/West H&A documents were void *ab initio*.**

First, U.S. Bank contends that the instruments purporting to invalidate its deed of trust are void *ab initio* as forgeries and that they have been "judicially declared" as such. Seabrook responds that, at most, the documents were voidable, as opposed to void; thus, they were valid and represented prima facie evidence of title until there was a successful suit to set them aside. *See Noble v. Marcus*, 533 S.W.2d 923, 926-27 (Tex. 1976) (deeds procured by fraud are voidable, not void, at the election of the grantor); *see also Ford v. Exxon Mobil Chem. Co.*, 235 S.W.3d 615, 618 (Tex. 2007) (deeds obtained by fraud are voidable rather than void and remain effective until set aside).

U.S. Bank's argument is based on the premise that the instruments were forged. The protection usually afforded to a bona fide purchaser for value without notice does not apply when the purchaser's claim is dependent on a forged instrument. *Cf. Wood v. HSBC Bank USA, N.A.*, 505 S.W.3d 542, 549 (Tex. 2016) ("Typically, a void deed in the chain of title would foreclose the bona-fide purchaser defense."); *see LendingHome Funding Corp.*, 2021 WL 6124319, at *9; *Armstrong DLO Props., LLC v. Furniss*, No. 05-13-01581-CV, 2015 WL 265653, at *8 (Tex. App.—Dallas Jan. 21, 2015, no pet.) (mem. op.); *Parker v. Hunegnaw*, No. 14-13-00031-CV, 2014 WL 800998, at *4 (Tex. App.—Houston [14th Dist.] Feb. 27, 2014, no pet.) (mem. op.). This is so because a forged instrument is void *ab initio* and inoperative. *E.g.*, *Parker*, 2014 WL 800998, at *4.

U.S. Bank claims that the Soria/West H&A documents described above were signed "under a forged power to act" or through purported authority that was itself based on a forgery. In Texas, "to be a forgery, the signing must be by one who purports to act as another." *Nobles*, 533 S.W.2d at 925-26. Thus, "one who signs

15

his true name, and does not represent himself to be someone else of the same name, does not commit a forgery because his act does not purport to be that of another. *Id.* at 926. U.S. Bank has not suggested that any of the signers of these documents were purporting to act as another; thus, U.S. Bank did not present any evidence that these documents are forgeries under Texas law.

Instead, U.S. Bank points to a federal bankruptcy court order, which granted a stipulation to void fraudulent instruments recorded against the Property. This order was filed in the real property records on April 15, 2019, after Seabrook made its loan and recorded its security interest in the Property.

In its summary-judgment motion and response, however, U.S. Bank did not assert that the allegedly fraudulent instruments relating to the Property should be considered void due to the preclusive effect of the bankruptcy court order. Thus, U.S. Bank did not establish the preclusive effect of this order on today's proceedings.

We overrule, in part, U.S. Bank's first issue.

## C. Fact issues exist regarding whether Seabrook had constructive notice of the alleged fraud.

U.S. Bank argues that Seabrook's bona fide mortgagee defense fails for an alternative reason. As noted above, to be a bona fide mortgagee, Seabrook had to establish that it had neither actual nor constructive knowledge of any outstanding claims or interests of third parties, like that of U.S. Bank, at the time it acquired its interest in the Property. In the second part of its first issue, U.S. Bank contends that the trial court erred because Seabrook had actual or constructive notice of Soria's fraud.

Although actual notice rests on personal information or knowledge, constructive notice is "notice the law imputes to a person not having personal information or knowledge." *See Noble Mortg. & Invs.*, 340 S.W.3d at 76. Recorded

16

instruments in a chain of title generally establish an irrebuttable presumption of notice. *Id.* (citing Tex. Prop. Code § 13.002; *Ford v. Exxon Mobil Chem. Co.*, 235 S.W.3d 615, 617 (Tex. 2007)). Thus, a lienholder is charged with knowledge of all facts that appear in the chain of title through which it claims "'that would place a reasonably prudent person on inquiry as to the rights of other parties in the property. . . .'" *See id.* (quoting *Nguyen v. Chapa*, 305 S.W.3d 316, 324-25 (Tex. App.—Houston [14th Dist.] 2009, pet. denied)). Generally, whether a party has notice is a question of fact; it becomes a legal question only when there is no room for ordinary minds to differ as to the proper conclusion to be drawn from the evidence. *Nguyen*, 305 S.W.3d at 323.

Seabrook identified both the 2017 SI and the 2017 Reconveyance as "essential links" in its chain of title. These documents were the subject of the Judicial Finding, as noted above. The Judicial Finding was recorded on August 24, 2018—months before Seabrook loaned Zeons $750,000, secured by the Seabrook DOT of trust, in February 2019. U.S. Bank contends that the Judicial Finding placed "any prospective purchaser or lender . . . on notice of Soria's fraud."

Seabrook argues that the Judicial Finding has no bearing on its status as a bona fide mortgagee because: (1) the Judicial Finding states that it is not a finding on "any underlying claims" and is limited to the "review of a ministerial act"; (2) no party other than U.S. Bank knew of the judicial review proceeding or had an opportunity to appear and participate; and (3) the Judicial Finding was "filed outside its chain of title."

Section 51.903 of the Texas Government Code is part of a statutory scheme designed to quickly identify and remove liens and encumbrances that are patently without basis in recognized law. *David Powers Homes, Inc. v. M.L. Rendleman Co.*, 355 S.W.3d 327, 338 (Tex. App.—Houston [1st Dist.] 2011, no pet.). Under the

17

statute, a purported debtor or one who holds an "interest" in the property may seek a judicial determination as to the legitimacy of a document purporting to create a lien or interest in real or personal property. *In re La*, 415 S.W.3d 561, 564 (Tex. App.—Fort Worth 2013, pet. denied). A trial court may only determine whether the challenged instrument is fraudulent as defined by section 51.901(c)(2); it may not rule on underlying claims or substantive evidentiary claims. *Id.* at 565. The court's finding may be made solely on review of documents appended to the motion and without hearing testimony. *Covenant Clearinghouse, LLC v. Foster*, No. 02-21-00334-CV, 2022 WL 1259051, at *2 (Tex. App.—Fort Worth Apr. 28, 2022, no pet.) (mem. op.) (citing *In re La*, 415 S.W.3d at 565). In fact, "[t]he court's review may be made ex parte without delay or notice of any kind." Tex. Gov't Code § 51.903(c). Accordingly, that Seabrook had no notice of the judicial review proceedings does not obviate the impact of the Judicial Finding on its status as a bona fide lender.

For purposes of a section 51.903 action, a document or instrument is presumed to be fraudulent if it purports to create a lien or assert a claim against real property or an interest in real property and "is not created by implied or express consent or agreement of the obligor, debtor, or the owner of the real or personal property or an interest in the real or personal property, if required under the laws of this state, or by implied or express consent or agreement of an agent, fiduciary, or other representative of that person." Tex. Gov't Code § 51.901(c)(2)(B). The real property records contain the Judicial Finding, which provides that the 2017 SI and the 2017 Reconveyance were not created with the express or implied consent of the owner or the owner's agent, fiduciary, or representative. The Judicial Finding was recorded on August 24, 2018, which was before the Seabrook DOT was recorded in February 2019. Pursuant to its terms, it was to be filed "in the same class of records"

18

and indexed "using the same names that were used in indexing" the 2017 SI and 2017 Reconveyance.

An "instrument that is properly recorded in the proper county is . . . notice to all persons of the existence of the instrument." Tex. Prop. Code § 13.002. The Judicial Finding, then, notified all persons that a federal district court had determined that the 2017 SI and 2017 Reconveyance were created without proper authority. However, "[w]hile not all public records establish an irrebuttable presumption of notice, the recorded instruments in a grantee's chain of title generally do." *Ford v. Exxon Mobil Chem. Co.*, 235 S.W.3d 615, 617 (Tex. 2007). Seabrook claims the Judicial Finding was outside its chain of title, but it offered nothing to show that it was not filed in the same class of records as and indexed with the 2017 SI and 2017 Reconveyance. And a party is bound to search the official county records because they constitute the primary source of information as to title, and that party is charged with knowledge of the existence and contents of recorded instruments that affect title to the property. *Trinity Fin'l Servs., LLC v. Mahanay*, No. 02-21-00027-CV, 2022 WL 247433, at *5 (Tex. App.—Fort Worth Jan. 27, 2022, no pet.) (mem. op.). U.S. Bank established that there are fact issues concerning whether Seabrook acquired its interest in the Property without notice of issues with essential links in its chain of title.[8]

Accordingly, we hold that Seabrook met its initial summary-judgment burden, but U.S. Bank presented sufficient evidence to create a genuine issue of material fact defeating Seabrook's entitlement to summary judgment on its affirmative defense of bona fide mortgagee status. *See Nguyen*, 305 S.W.3d at 323 (explaining that whether

---

[8] U.S. Bank asserts that other discrepancies apparent from the face of the real property record also put Seabrook on notice of outstanding claims or interests of third parties. Given our holding, it is unnecessary to address these additional arguments.

a party has notice is generally a fact question; it becomes a legal question only when "there is no room for ordinary minds to differ as to the proper conclusion to be drawn from the evidence"). The trial court erred in granting Seabrook's second summary-judgment motion.

Accordingly, we sustain in part U.S. Bank's first issue.[9]

## Expunction of Lis Pendens

Seabrook argued in its first summary-judgment motion that the expunction of the lis pendens filed in connection with this lawsuit "eliminate[d] all constructive and actual notice," thus entitling it to bona fide mortgagee status. Seabrook also contended that this expunction order "restore[d] the chain of title of the Property free and clear of the potential claim of interest." In its second issue, U.S. Bank challenges the propriety of summary judgment for Seabrook on the expunction of lis pendens ground.

A notice of lis pendens "broadcasts 'to the world' the existence of ongoing litigation regarding ownership of the property." *Sommers for Ala. & Dunlavy, Ltd. v. Sandcastle Homes, Inc.*, 521 S.W.3d 749, 753 (Tex. 2017) (quoting Tex. Prop. Code § 13.004(a)). For much the same reason, expunging the "broadcast[ ]" is not a "full-blown adverse judgment on the merits." *Id.* at 753-57 (rejecting intermediate court's interpretation of expungement's effect on notice of lis pendens). Expungement "restor[es] the chain of title free of the record notice of [the] potential claim of interest" but does not leave the "persons claiming an interest in [the] property . . . in a worse position for having filed a [later-expunged] lis pendens . . . than had they not filed one." *Id.* at 756–57.

---

[9] Due to our disposition, we need not consider U.S. Bank's contention that Seabrook had actual knowledge because it would provide U.S. Bank no greater relief than a remand. *See* Tex. R. App. P. 47.1.

20

Property Code section 12.0071 provides that, after a certified copy of an order expunging a notice of lis pendens has been recorded, the notice and any information that is derived or that could have been derived from the notice does not "constitute constructive or actual notice of any matter contained in the notice or of any matter relating to the action in connection with the notice" and "an interest in the real property may be transferred or encumbered free of all matters asserted or disclosed in the notice and all claims or other matters asserted or disclosed in the action in connection with which the notice was filed." Tex. Prop. Code § 12.0071(f)(1)(A)(i), (2).

Here, Seabrook's security interest was obtained *before* the trial court expunged the lis pendens. Because section 12.0071(f) only applies *after* a certified copy of an expungement order has been recorded, the expungement order in this case has no bearing on Seabrook's lien claim or status as a bona fide lender. The trial court erred in granting Seabrook's first summary-judgment motion.

Accordingly, we sustain U.S. Bank's second issue.

We reverse and remand for proceedings consistent with this opinion.

/s/    Kevin Jewell
        Justice

Panel consists of Justices Jewell, Bourliot, and Poissant.